UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 18-CR-149 (SRN/DTS) |
| Plaintiff, | |
| v. | **ORDER &** <br> **REPORT AND RECOMMENDATION** |
| NORRIS DESHON ANDREWS, | |
| Defendant. | |

---

Jeffrey S. Paulsen, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff

Norris Deshon Andrews, Sherburne County Jail, 13880 Business Center Drive NW, Elk River, Minnesota 55330, Pro Se Defendant

---

## INTRODUCTION

Defendant Norris Deshon Andrews is charged with one count of being a felon in possession of a firearm. The charge stems from a shooting that occurred on May 15, 2018. Foregoing his right to counsel, Andrews seeks to suppress, in effect, any evidence the Government may possibly use at trial and seeks the disclosure of an eyewitness. He also moves to dismiss the indictment against him, contending that the Government's agents engaged in outrageous conduct and that there is a lack of probable cause. All of these motions are denied.

## FINDINGS OF FACT

### I.    The Shooting

Around 4:45 on May 15, 2018, Minneapolis police responded to a shooting near 1711 Plymouth Avenue North. Def. Ex. 14 (Case Report Suppl. 13). They found two

victims, who were taken to the hospital. *Id.* Officers obtained security camera footage of the shooting. Hr'g Tr., Sept. 10, 2018 ("Sept. 10 Tr."), at 10-11, Docket No. 51; Gov't Ex. 1 ("Cropped" Video); Def. Ex. 18 ("Uncropped" Video). The video shows two individuals arrive in a blue SUV with no license plate and approach a group of people. Sept. 10 Tr. 11-12; Gov't Ex. 1. One of the individual appears to talk to someone in the group, then pulls a gun and fires several shots before driving away in the SUV. Sept. 10 Tr. 10; Gov't Ex. 1.

A female witness told an officer she believed the shooter to be Norris Andrews, who went by the nickname "N.O." Def. Ex. 15 (Case Report Suppl. 9). She described him as being "a heavy set black male, approximately 6 feet, with long dread locks," and showed the officer a picture of Andrews from her phone. *Id.* The witness also provided a phone number she believed Andrews used. Sept. 10 Tr. 13. Using this information, along with booking photos, Sergeant Kelly O'Rourke concluded that Andrews appeared to be the shooter in the security video. *Id.* at 13-14. He also discovered that the phone number provided by the witness was linked to a subscriber with the last name of Andrews. *Id.* at 14.

Sgt. O'Rourke also learned of another shooting that occurred nearby, about an hour before the one he was investigating, where officers found similar shell casings. *Id.* A witness to that shooting described the shooter as "a large black male, dark skin and long braided hair," and the vehicle he was driving as a blue Chevrolet Tahoe. *Id.* at 14-15; Def. Ex. 14 (Case Report Suppl. 13). Based on this information, Sgt. O'Rourke wrote an exigent order for real time location updates and call detail records to T-Mobile, the service provider for the phone number associated with Andrews. Sept. 10 Tr. 15; Gov't

Ex. 3. After submitting the exigent order, Sgt. O'Rourke received emails about every 15 minutes giving him the approximate location of the phone. Sept. 10 Tr. 20; Gov't Ex. 3.

## II.    The Arrest

Around 11 o'clock that evening, the phone stopped moving, staying near 2810 Girard Avenue North. Sept. 10 Tr. 21; Gov't Ex. 9. Sgt. O'Rourke sent two other police officers, Officer Andrew Schroeder and Sergeant Joel Pucely, to look for Andrews and the blue Tahoe around 2810 Girard. Hr'g Tr., Oct. 5, 2018 ("Oct. 5 Tr."), at 12-13, Docket No. 69. The officers searched a small radius around 28th and Girard, but did not find the Tahoe or Andrews. *Id.* at 14, 158.

As he sat in his patrol car, Sgt. Pucely noticed a white GMC Yukon drive slowly past him twice. *Id.* at 15. The Yukon stopped on Girard and Pucely saw two men, one matching Andrews's general description, come out of a yard and get in the car. *Id.* at 18, 28. The Yukon pulled away from the curb without signaling and then turned onto 29th Avenue North without completely stopping at the stop sign. *Id.* at 18-19. Sgt. Pucely followed the Yukon and called Officer Schroeder. *Id.* at 19. When Officer Schroeder was in a position to help him, Sgt. Pucely stopped the Yukon for the two moving violations. *Id.* at 20. As they stopped the Yukon, Officer Schroeder pulled alongside Sgt. Pucely and noticed someone in the back seat of the Yukon lean over, out of his view. *Id.* at 159-60.

Sgt. Pucely approached the vehicle and saw three people, two seated in front and one seated behind the driver. *Id.* at 21; Def. Ex. 31 (Sgt. Pucely's Body Cam). When Sgt. Pucely reached the car, he recognized the backseat passenger as Andrews. Oct. 5 Tr. 21. He ordered Andrews to step out of the vehicle, handcuffed him, and placed him in the back of a police car without incident. *Id.* at 21; Def. Ex. 31. Other officers arrived and

3

helped remove the other two occupants from the Yukon and take them into custody. Oct. 5 Tr. 21-22; Def. Exs. 31, 32.

Sgt. O'Rourke asked the officers at the scene to tow the Yukon, and officers conducted an inventory search before moving the vehicle. Oct. 5 Tr. 90, 95. During that search, an officer found a 9mm handgun under the back seat. *Id.* at 105; Def. 11 (Case Report Suppl. 30). Officers took Andrews and the other two individuals to City Hall for questioning. Gov't Ex. 7 (Appl. for Search Warrant 3); Def. Ex. 32.

## III.    Subsequent Searches and Identifications

Sgt. O'Rourke interviewed the driver of the Yukon, Dominique Smith. He learned that Andrews and the other passenger, Montreal Tyson, had originally asked her to pick them up around 26th Street and James Avenue North. Sept. 10 Tr. 24-25. Sgt. O'Rourke sent officers to that area, where they found a blue Tahoe. *Id.* at 25. He later obtained a warrant to search the Tahoe.  Sept. 19 Tr. 13; Gov't Ex. 7. Inside, officers found identification linking Andrews to the car. Sept. 19 Tr. 14; Gov't Ex. 7 (Receipt, Inventory and Return).

A few days after the shooting, Sgt. O'Rourke interviewed one of the two shooting victims in the hospital. Sept. 19 Tr. 15. The victim described the shooter as having long hair and wearing glasses. *Id.* at 16. The sergeant prepared a six photo lineup and returned to the hospital. *Id.*; Gov't Ex. 6. He instructed the victim that the shooter may not be in one of the photos and to view the photos one at a time. Sept. 19 Tr. 18. The victim identified Andrews as the shooter. *Id.* at 19; Gov't Ex. 6.

After getting a warrant, Sgt. O'Rourke also took a DNA sample from Andrews. Sept. 19 Tr. 20; Def. Ex. 31 (Findings and Order).

## IV.    Procedural History

The unusual course of Andrews's pretrial motions and hearings warrants a brief discussion. Andrews was originally represented by Mr. Aligada of the Federal Defenders Office. Mr. Aligada filed a number of pretrial motions. *See* Docket Nos. 24-31, 40-42. The Court held a hearing on September 10 and addressed the non-dispositive motions.[1] Sept. 10 Tr. 6-7. The evidentiary portion of the hearing was cut short when Mr. Aligada requested a continuance to review an exhibit the Government attempted to introduce, but had not disclosed. *Id.* at 26-28.

When the hearing resumed on September 19, Andrews informed the Court he wished to represent himself, at least for the hearing, and bring additional motions. Sept. 19 Tr. 3-8. The Court found that Andrews knowingly and voluntarily waived his right to representation at the hearing. *Id.* at 9-10. Sgt. O'Rourke testified, and Andrews cross examined him for an extended period of time. *Id.* at 21-70, 73-87. Because Sgt. O'Rourke's testimony went until nearly 5:30 p.m., the Court continued the hearing. *Id* at 90. The hearing reconvened on October 5 at 9 a.m. Oct. 5 Tr. 2. Andrews continued to represent himself with Mr. Aligada as standby counsel. *Id.* at 2-3. Sgt. Pucely and Officer Schroeder testified, as did Andrews. *Id.* at 297. The hearing lasted nearly seven hours. Court Minutes, Oct. 5, 2018, Docket No. 48.

After the hearing, Andrews filed several pro se motions. Docket Nos. 53-59, 65-66. The Court also approved Mr. Aligada's request to withdraw as counsel and appointed

---

[1] The subsequent order on the non-dispositive motions omitted the Court's ruling on Andrews's Motion to Retain Rough Notes (Docket No. 29). As the record makes clear, that motion was granted. The Court does not doubt that the Government has complied with its ruling.

Kevin O'Brien from the Criminal Justice Act Panel to represent Andrews. Order, Oct. 18, 2018, Docket No 64; Order for Appointment of Counsel, Docket No. 67. Following a November 9 hearing, it was unclear whether Andrews wished to proceed pro se. It was also unclear which motions were properly before the Court. So, the Court ordered Mr. O'Brien to withdraw all of the prior motions not already disposed of, and refile any appropriate motions after discussing them with Andrews, which he did. *See* Docket Nos. 75, 80, 85-88.

Andrews sent a letter to the Court indicating he was unhappy with Mr. O'Brien. Letter to the Court,  Nov. 14, 2018, Docket No. 92. So, the Court held a final hearing on December 17. Andrews waived his right to counsel, but Mr. O'Brien was appointed to serve as standby counsel. Dec. 17 Tr. 4. Andrews then testified and entered exhibits regarding motions he had filed or intended to file. *Id.* at 41-127. The Court allowed Andrews to file any of the pro se motions and exhibits he had previously filed but which Mr. O'Brien had not refiled because he did not believe he could do so consistent with his ethical obligations. *Id.* at 146.

Andrews refiled all of his original pro se motions and exhibits and the Government filed a response. After the Government's response, Andrews filed eight new pro se motions, and a memorandum of support. Despite these new motions being untimely, the Court will address them on the merits with the other motions.

## CONCLUSIONS OF LAW

### I.    Procedural Motions (Docket Nos. 75, 96, 105, 109-11)

Andrews makes several procedural requests in his outstanding motions. First, Andrews asks the Court to admit Defendant's Exhibits 31-51 (Docket No. 105). The Court

has reviewed the exhibits and the motion is granted. He also seeks discovery of various pieces of evidence purportedly possessed by the Government but not yet turned over to him (Docket No. 75). The Government has agreed to provide the requested material to the extent it exists. But, it notes that none of the individuals who testified at the pretrial hearing testified to the Grand Jury and that Andrews's phone has not been searched. The Court is satisfied that Andrews's request is now moot based upon the Government's representations.

Next, Andrews seeks to reopen the evidentiary hearing to call additional witnesses (Docket No. 111) and to present oral argument on his motions (Docket No. 110). These motions are denied. The Court set a schedule at the end of the December 17 hearing, and Andrews has not sufficiently demonstrated a need to reopen the hearing. Andrews's testimony and argument during the hearings addressed all of his motions, and he filed a written memorandum with the help of his standby counsel. The Court is confident that Andrews has had a fulsome opportunity to present the arguments for his motions, and it will consider them accordingly.

Finally, Andrews asks the Court to grant him a new detention hearing (Docket Nos. 96, 109). In support of this hearing, he notes that his mother has cancer and her health is deteriorating. Mot. for Detention Bond Hr'g 2, Docket No. 96. He also contends, for several reasons, he cannot mount a proper defense from jail and there are no outstanding warrants against him. Mot. Revocation of Order and for Detention Hr'g, Docket No. 109.

Taking the cited grounds as true, they do not entitle Andrews to a new detention hearing. A detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material

bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Even if he were given the chance to present compelling evidence, none of the grounds Andrews posits materially bear on assuring his further appearance in court or the safety of the community. Moreover, as his repeated and voluminous filings make clear, Andrews's ability to prepare and present a defense has not been unduly hampered by his current incarceration. Accordingly, his motion is denied.

## II.    Motions to Dismiss (Docket Nos. 80, 98, 100-01, 116-19)

Andrews seeks to dismiss the indictment against him for outrageous government conduct.[2] "[I]n rare instances, the investigative methods employed by law enforcement could be 'so outrageous that due process bars the government from invoking the judicial process to obtain a conviction.'" *United States v. Combs*, 827 F.3d 790, 794 (8th Cir. 2016) (quoting *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003)). Dismissal is appropriate only when the Government's conduct "falls within the narrow band of the most intolerable government conduct, namely, actions violating that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause." *Id.* at 794-95 (internal quotations and citations omitted).  Andrews asserts that the government has engaged in such outrageous conduct by fabricating incriminating evidence,

---

[2] One of Andrews's motions is styled as a motion to dismiss for lack of probable cause (Docket No. 98). But his argument for a lack of probable cause is based on the alleged outrageous conduct: without the fabricated evidence, there would be no probable cause. In any event, challenges to the adequacy or sufficiency of the evidence before the grand jury have long been held to be without merit. *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363-64 (1956)).

destroying exculpatory evidence, withholding evidence, engaging in vindictive prosecution, interfering with his right to confront his accusers, and intimidating a witness.[3] None of his arguments are availing and the motions are denied. Because many of the grounds for dismissal are repeated throughout his various motions, the Court will address each ground, rather than each motion, in turn.

### A.    Fabrication of evidence

Andrews contends that the Government has fabricated most of the evidence in its case against him, including making false statements in police reports, generating false ballistics reports, forging a search warrant, planting evidence in the two vehicles searched in relation to this case, forging a new title for the Tahoe, and allowing officers to perjure themselves to support the fabricated evidence.[4] The Court is unconvinced. It has examined the documents that Andrews contends contain clear discrepancies, but does not see the concerns he has raised. Andrews provides no other basis for any of these accusations other than his own testimony. This is not enough to meet the "heavy burden of proving outrageousness on the part of the government." *United States v. Gleason*, 980 F.2d 1183, 1187 (8th Cir. 1992).

### B.    Destruction of exculpatory evidence

Andrews also asserts that the Government has destroyed exculpatory evidence, pointing in particular to the security footage from the "Loring Tower" apartments that he claims would provide an alibi. Although "[i]t is well established that the Government may

---

[3] Andrews recently brought a new motion, seeking dismissal for violation of the Speedy Trial Act (Docket No. 126). The Court will address that motion in a separate R&R.

[4] Several of these contentions will be addressed more specifically in the motions to suppress.

not in good or bad faith suppress evidence favorable to the accused," *United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012), Andrews has not shown that is what happened here. Nowhere does Andrews allege that the Government ever possessed the exculpatory evidence he claimed they destroyed. Rather, he contends that both his state public defender and federal public defender, at the behest of the Government, ensured that the video was destroyed. Again, with only his bare assertions of this collusion, Andrews cannot satisfy his burden of proving outrageous conduct. *Gleason*, 980 F.2d at 1187.

### C.    Withheld evidence

Next, Andrews argues that the indictment should be dismissed because the Government has withheld other exculpatory evidence in its possession, namely certain phone records and squad and body camera video. He also contends the Government has been untimely in producing much of the evidence against him.

As to the alleged *Brady* violation by withholding exculpatory evidence, Andrews has not shown either that "the evidence was favorable" to him, or that "it was material to guilt," both of which he must show to demonstrate the Government violated *Brady*. *United States v. Jeanpierre*, 636 F.3d 416, 422 (8th Cir. 2011). To the contrary, the phone records appear to place him in the general area of the shootings around the time they occurred. Def. Ex. 22.

The Court is also unpersuaded by Andrews's request to dismiss the indictment because of the Government's alleged untimely disclosures of evidence in violation of Rule 16 of the Federal Rules of Criminal Procedure. Rule 16 requires the Government to allow a defendant to inspect and copy any item in its control that is "material to preparing the

10

defense," that the Government intends to use in its case-in-chief at trial, or that "was obtained from or belongs to the defendant." Fed. R. Crim P. 16(a)(1)(E). If the Government fails to comply with that requirement, the Court has broad authority to sanction the Government, including prohibiting the introduction of the undisclosed evidence. *Id.* at 16(d)(2). In considering appropriate sanctions, the Court considers the reason for the delayed production of the evidence, the prejudice to the defendant, and whether a lesser sanction would ensure the Government's future compliance. *United States v. Sims*, 776 F.3d 583, 585-86 (8th Cir. 2015).

Dismissal for any alleged late discovery is not warranted here. As an initial matter, though Rule 16 gives the Court broad authority to grant any just order necessary to address a lack of compliance, the Rule does not contemplate dismissal as the preferred method of reprieve for a defendant. Rather, a continuance or suppression of the evidence is the proper course. Fed. R. Crim P. 16(d)(2). Regardless, even if the Government has produced evidence after it should have,[5] Andrews has not demonstrated any prejudice to his defense. His trial is, at a minimum, several weeks away and he has ample time to review the evidence the Government intends to use. To the extent it exists and is not immune from discovery, the Government has produced or will produce the material he has requested.

---

[5] The Court is unconvinced that the evidence Andrews claims was untimely disclosed was, in fact, untimely. Though he tends to label any evidence "exculpatory," it is unclear how much of the evidence would be material to his defense at trial. It is also doubtful that the Government intended to use much of it in its case-in-chief. To the extent that Andrews has requested specific items not previously disclosed under the general requirements for disclosure, the Government has responded reasonably to those requests.

### D.  Witness tampering

In one of his more recent motions (Docket No. 119), Andrews alleges that, since the conclusion of the motion hearings, police officers threatened his girlfriend to not testify. He offers no evidence in support of this accusation, and the Court cannot find it credible.

### E.  Eyewitness identification

Andrews posits that the police acted outrageously by either fabricating an eyewitness identification, or, if the eyewitness is real, not providing the identity of the witness and not recording the interview on their bodycams. To support his argument, Andrews suggests that the uncropped video of the shooting proves that there could not have been an eyewitness as described in the police report, and that even the report only states that the witness "heard" the gunshots before running inside. Even if the witness did not see the shooting itself, the report indicates that she told the police officer that she saw an argument between two people and then heard gunshots. Def. Ex. 15 (Case Report Suppl. 9). She then identified the person arguing with the victim as Andrews. *Id.* This was a reasonable tip for the police to proceed on, even if the witness did not directly see Andrews shoot the victim.

Further, Andrews's contention that the police violated his Sixth Amendment right to confrontation is without merit because his right to confrontation has not yet been implicated. The Sixth Amendment guarantees Andrews the right "to be confronted with the witnesses against him," but specifically "[i]n all criminal prosecutions." U.S. Const., amend. VI. Should the Government ultimately attempt to use the eyewitness or enter her

statement at trial, Andrews may then invoke his right to confrontation. *See, e.g.*, *Davis v. Washington*, 547 U.S. 813, 821-34 (2006) (discussing the Sixth Amendment's application to statements made to police in the course of an investigation).

### F.    Vindictive prosecution

Finally, Andrews seeks dismissal of the indictment for vindictive prosecution. The defendant bears the burden to show prosecutorial vindictiveness, and his "evidentiary burden is a heavy one." *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004). Absent objective evidence of a prosecutor's vindictive motive, "a defendant may, in *rare* instances, rely upon a presumption of vindictiveness." *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015) (quoting *United States v. Kriens*, 270 F.3d 597, 602 (8th Cir. 2001)). However, a defendant relying upon such a presumption must demonstrate more than "a mere opportunity for vindictiveness." *Id.* at 881 (citing *United States v. Goodwin*, 457 U.S. 368, 384 (1982)).

Andrews has not demonstrated prosecutorial vindictiveness. His argument is the same he makes for outrageous government conduct in general: that the Government, including the prosecutor, have fabricated, destroyed, and tampered with evidence as they see fit. As noted above, the Court rejects Andrews's assertions about the Government's conduct. Accordingly, it cannot serve as a basis for dismissing the indictment for vindictive prosecution.

## III.    Motions to Suppress

Andrews also seeks to suppress evidence he claims was illegally obtained by the police, and thus is inadmissible under the Fourth Amendment.

### A.    The exigent pings (Docket Nos. 85, 104)

Andrews seeks to suppress the cell-site location information—the "pings" from T-Mobile—the police obtained after submitting an exigent request, contending that they were obtained without a warrant, that the circumstances were not actually exigent, and that Sgt. O'Rourke made false statements in his request.[6] None of these arguments is availing.

First, Andrews argues that the police should have obtained a warrant for the information. The Stored Communications Act, however, authorizes service providers such as T-Mobile to divulge information, including real time cell-site location information, "to a government entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." 18 U.S.C. § 2702(c)(4); *see also United States v. McHenry*, 849 F.3d 699, 705-06 (8th Cir. 2017). Andrews's prior counsel, in a motion that was originally withdrawn, and later in a motion that was never fully briefed or argued, suggests that the exigent ping information must be suppressed under *Carpenter v. United States*, 138 S. Ct. 2206 (2018). Andrews has not elaborated on or further developed this argument. Although the Supreme Court in *Carpenter* held that the collection of *historical* cell-site location information is a search requiring a warrant, it expressly stated that its ruling did not address *real-time* CSLI. *Carpenter v. United States*, 138 S.Ct. 2206, 2220

---

[6] Andrews also argues that the police failed to comply with requirements set forth by 18 U.S.C. § 2518. But that provision, which authorizes the interception of the contents of electronic communications, is not at issue here. *Compare* 18 U.S.C. § 2518, *with* 18 U.S.C. § 2702.

(2018). Because Andrews has not fully articulated a constitutional challenge to the exigency provisions of the Stored Communications Act, this Court hesitates to develop one on his behalf. It may simply be noted that the *Carpenter* decision did not analyze real-time CSLI, and, in fact, expressly held that the decision did not apply to real-time CSLI. Moreover, in its opinion, the *Carpenter* Court emphasized that it was the insight that can be gleaned by viewing a person's historical movements holistically that raised Fourth Amendment concerns, a scenario that is not at issue here. *Id.* at 2218-20.

Andrews also argues that, even if a warrant was not necessary, the exigency exception is not satisfied because the shooting victims' injuries were not life threatening and the police had no reason to believe anyone else would be hurt. As a matter of reasonableness, the Court disagrees. At the time Sgt. O'Rourke applied the real-time pings, he had a suspect linked to two different shootings with multiple victims. As far as Sgt. O'Rourke knew, the suspect was still armed and dangerous. That the prior victims' injuries were not life threatening is inconsequential; the shooter had demonstrated a willingness to use deadly force.

Finally, Andrews contends that Sgt. O'Rourke made false statements in the application for the real-time location information. Neither his motion nor memorandum state exactly which statements he believes are false. He may be challenging the facts attributed to an eyewitness based on his contention that no such witness exists. Gov't Ex. 3, at 2. As previously noted, the Court does not accept Andrews's assertions on that matter. He may be challenging Sgt. O'Rourke's misstatement that the suspect got back out of the Tahoe to shoot the victim again. Although it is clear from the security footage that the suspect does not get back out of the vehicle, it does appear that he fires more

15

shots at one of the victims after getting in the car. Gov't Ex. 1. The misstatement is inconsequential to T-Mobile's good faith basis for believing an emergency situation existed. For these reasons, the Court sees no reason to suppress the real time cell-site location information.

**B.    Arrest and search of the Yukon (Docket No. 86)**

Andrews seeks to suppress any physical evidence obtained from the stop of the Yukon and Andrews's subsequent arrest.

As to the Yukon, Andrews lacks standing to challenge any search of that vehicle. "Fourth Amendment rights are personal rights that may not be asserted vicariously." *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004). The defendant "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Here, Andrews has made no such showing. He was the passenger of an SUV driven by a Dominique Smith.[7] Sept. 10 Tr. 22-23. Andrews does not otherwise argue that he had an expectation of privacy in any bag or compartment within the car. As such, he has not demonstrated his standing to challenge the search and, consequently, to suppress any evidence obtained from it.

The police also had probable cause to arrest and search Andrews. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause," which "exists when the totality of the facts known at the time of the arrest would justify a

---

[7] Andrews argues that he owns the Yukon, pointing to the police report of non-inventoried property in the investigation, which lists him as the owner. Def. Ex. 33, at 10. But this report is contradicted by the title records, which list a "Sunny Day Welch" as the owner. Def. Ex. 62, at 2.

reasonable person in believing that the individual has committed or is committing an offense." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008-09 (8th Cir. 2017). Here, the arresting officers had probable cause to believe Andrews was the perpetrator of the earlier shooting, as an eyewitness had identified him as the shooter and security video showed the shooter to be a man with similar physical characteristics and clothing. Upon arresting Andrews, the police were allowed to search his person. *United States v. Wright*, 844 F. 3d 759, 763 (8th Cir. 2016) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)). Any items recovered during that search need not be suppressed.

### C.    Photographic lineup (Docket No. 87)

Andrews challenges the positive identification made by one of the shooting victims from a photographic array as being unduly suggestive.[8] Because this was a photographic identification, Andrews's suggestion that his Sixth Amendment rights were violated is without merit. *See United States v. Ash*, 413 U.S. 300, 317-319 (1973) (holding that, because the defendant is not present during photographic identifications, the presence of counsel is not necessary to guarantee that the defendant is not "misled by his lack of familiarity with the law or overpowered by his professional adversary").

Nor was the photographic lineup so impermissibly suggestive as to require suppression under the Fifth Amendment. Pre-trial photographic identifications may not be admitted if the "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Courts in this circuit first examine whether the photographic presentation

---

[8] The motion also encompasses a second, single-photo identification by the other shooting victim. The Government has represented that it will not be offering the out-of-court identification at trial, so the motion is moot as to that identification.

was impermissibly suggestive and then determine whether, based upon a totality of the circumstances, the suggestive presentation violated due process by undermining the reliability of the identification and creating the substantial likelihood of irreparable misidentification. *United States v. Martin*, 391 F.3d 949, 952 (8th Cir. 2004).

Here, there was no undue suggestiveness. Each of the six photographs were of individuals who are all larger built, African American males with longer dreadlocks, each apparently in his 20s or 30s. Gov't Ex. 6. Andrews correctly observes that his picture appears lighter than the other five, and that his head takes up more of image. Had the victim viewed each the photographs side-by-side, rendering the slight differences in lighting and proportion more stark, the procedure may approach the threshold of impermissible suggestiveness. But that is not what happened. Rather, Sgt. O'Rourke informed the victim that the suspect may or may not be among the photographs he sees, and then instructed the victim to look at each photograph, one at a time. Sept. 19 Tr. 18. Given that no other physical differences tended to isolate Andrews's photo, *Schawitsch v. Burt*, 491 F.3d 798, 802 (8th Cir. 2007), the procedures used in conducting the photo lineup sufficiently mitigated any differences in the photographs themselves. Suppression is not warranted.

### D.    Search of the Chevrolet Tahoe (Docket Nos. 88, 97)

Andrews seeks to suppress any evidence recovered from the search of the Tahoe, making three distinct arguments. First, he argues that the search warrant for the Tahoe relied upon information obtained from the allegedly illegal searches of Andrews and the Yukon. *See Wong Sun v. United States*, 371 U.S. 471, 491 (1963). Because the Court

has already addressed those prior searches and found they did not violate the Fourth Amendment, this argument fails.

Similarly, Andrews suggests that the search warrant affidavit, on its face, did not provide sufficient probable cause to justify the warrant. When such a challenge is made, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999). "An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010). This Court examines the sufficiency of an affidavit using "common sense and not a hypertechnical approach." *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007). Taking the statements in the affidavit as true, there was sufficient probable cause in the affidavit to support a warrant. The affidavit stated that the shooter drove a blue Tahoe with no front plates at the shooting, Gov't Ex. 7 (Application), at 3, suggesting that evidence from the shooting may well be in that vehicle. The suspect who had been arrested was associated with a person who owned a blue Tahoe. *Id.* The driver of the Yukon when Andrews was arrested also informed police of the area where he first told her to meet him, and a blue Tahoe matching the description of the vehicle in the video of the shooting was found in that area, *id.*, suggesting the shooting suspect had abandoned the vehicle there. Taking these facts together, the affidavit provided the issuing judge good reason to believe there was a fair probability that the Tahoe would contain evidence of the earlier crime.

Finally, Andrews contends that Sgt. O'Rourke made knowingly false statements, or at least included these statements with a reckless disregard for their truth. He requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). "A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Conant*, 799 F.3d 1195, 1199 (8th Cir. 2015) (quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001)). To get a *Franks* hearing, Andrews must make "a substantial preliminary showing" that the affiant at least recklessly disregarded the truth through a false statement or omission and that the false statement or omission "is necessary to the finding of probable cause." *Franks*, 438 U.S., at 155-56. This preliminary showing requires Andrews to "offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). "A *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard for the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010).

Andrews has failed to make the strong initial showing required for a *Franks* hearing, as the facts he challenges in the affidavit do not show even a reckless disregard for the truth. Andrews contends that O'Rourke was at least reckless when he stated that "Andrews's child's mother . . . is the owner of a 2002 blue Tahoe with a 21 day temporary sticker per Minneapolis CCN 18-045880." Gov't Ex. 7 (Application), at 3. Although it appears to be true that the woman O'Rourke attributed ownership of the Tahoe to did not own it, Def. Ex. 63, this misstatement of fact was not reckless, much less knowing. Sgt.

O'Rourke based the statement on an incident report involving Andrews and the woman.[9] The report stated that she owned a blue 2002 Chevrolet Tahoe. Gov't Ex. 11 (Incident Report), at 6. O'Rourke's reliance on the report for his information simply cannot be reckless without further evidence that he knew the report was unreliable.

Andrews also notes that O'Rourke uses the 2002 model year in his affidavit, when the vehicle that was searched was, in fact, a 2001 model. Although Andrews may be correct that the Tahoe was in police custody long enough for such an issue to be clarified, the difference of a single model year, in this instance, does not bear on probable cause. Andrews has not made an initial showing of even reckless disregard for the truth in the affidavit, so his request for a *Franks* hearing, along with his request to suppress any evidence from the search, are denied.

### E.    Shooting witness (Docket Nos. 102-03)[10]

Andrews seeks to compel the identity of—and then suppress the identification by— the witness who identified Andrews as the shooter. As previously discussed regarding related motions to dismiss (Docket Nos. 80, 98), the police did not violate his rights by interviewing the witness without recording the interview. Andrews argues that the witness's identification of him must be suppressed because she could not have seen the

---

[9] Andrews mistakenly argues that Sgt. O'Rourke lied about the entire report, since the Minneapolis incident report with the number cited has nothing to do with Andrews. Def. Ex. 13. But the corresponding St. Paul incident report does contain the information Sgt. O'Rourke claims. Gov't Ex. 11. Sgt. O'Rourke clearly made a misstatement in his affidavit, which was perhaps negligent, but clearly not intended to obscure the truth.

[10] Docket Nos. 102 and 103 appear to be duplicative—both are copies of Andrews's motion previously filed as Docket No. 58.

shooting as the report states she did. But that is a question of credibility; if the witness testifies, Andrews will have the opportunity to cross examine her.

Nor has Andrews shown he is entitled to the witness's identity at this time. The circumstances under which the witness approached the police and asked to talk to them without being recorded make her at most a confidential "tipster." A defendant seeking a confidential informant's identity "must show that his right to the information outweighs the government's traditional privilege to withhold it." *United States v. Hollis*, 245 F.3d 671, 674 (8th Cir. 2001). Andrews has made no such showing, only stating that he believes the police fabricated the witness's identification of him. The Government has represented that it is unlikely to call the witness to testify at trial, and it is not obvious to the Court that information provided by the witness is otherwise material to the determination of the case. Accordingly, the Government is not obligated to reveal the witness's identity at this time. *Id.*

### F.    Untimely disclosures (Docket Nos. 99, 112)

Andrews seeks the suppression of numerous pieces of evidence that he contends were untimely disclosed in violation of Federal Rule of Criminal Procedure 16(a).[11] This Court has authority to address noncompliance with Rule 16 by requiring discovery or inspection of the previously undisclosed evidence, granting a continuance, or prohibiting the introduction of said evidence at trial. Fed. R. Crim P. 16(d)(2). The Court considers the reason for the delayed production of the evidence, the prejudice to the defendant, and

---

[11] Besides seeking suppression of evidence for being untimely, Andrews re-raises the *Brady* violation and evidence fabrication arguments he made in support of dismissal of the indictment. He makes no new showing for the merits of those claims, and the Court considers them addressed.

whether a lesser sanction would ensure the Government's future compliance. *Sims*, 776 F.3d at 585-86 (8th Cir. 2015).

Assuming the Government disclosed evidence late in violation of Rule 16,[12] Andrews has not demonstrated any prejudice warranting suppression. Andrews received almost all the "untimely" evidence by September 12, 2018. The Court allowed him to file additional motions as late as December 2018. Any prejudice related to bringing pretrial motions was mitigated by this de facto continuance. His trial remains several weeks away, so he has a meaningful chance to review the material as part of his defense. Without a greater showing of prejudice or a demonstration of bad faith on the part of the Government, this Court will not suppress the evidence.

### ORDER

For the reasons set forth above, IT IS HEREBY ORDRED THAT:

1.    Defendant's Motion to Retain Rough Notes and Evidence [Docket No. 29] is GRANTED.

2.    Defendant's Motion for Discovery [Docket No. 75] is DENIED AS MOOT.

3.    Defendant's Motion for Detention Bonding Hearing [Docket No. 96] is DENIED.

4.    Defendant's Motion to Admit Exhibits [Docket No. 105] is GRANTED

5.    Defendant's Motion for Revocation of Order and for Detention Hearing [Docket No. 109] is DENIED.

---

[12] Again, the Court is skeptical that the copious amount of evidence Andrews seeks to suppress falls within the scope of Rule 16(a), and Andrews does not explain why it does.

6.      Defendant's Motion for Oral Argument of Pretrial Motions [Docket No. 110] is DENIED.

7.      Defendant's Motion to Reopen Pretrial Motions Hearing and Call Additional Witnesses for Evidence and Testify [Docket No. 111] is DENIED.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1.      Defendant's Motion to Dismiss on the Grounds of Violations of the Due Process Rights of the Defendant Arising Out of Outrageous Government Conduct [Docket No. 80] be DENIED.

2.      Defendant's Motion to Suppress Cell-Site Location Information [Docket No. 85] be DENIED.

3.      Defendant's Motion to Suppress Evidence from Unlawful Arrest and Stop and Search of a GMC Yukon [Docket No. 86] be DENIED.

4.      Defendant's Motion to Suppress Eyewitness Identifications [Docket No. 87] be DENIED.

5.      Defendant's Motion to Suppress Evidence from Search of Chevrolet Tahoe and Request for *Franks* Hearing [Docket No. 88] be DENIED.

6.      Defendant's Pro Se Motion to Suppress Search Warrant for False Information in Affidavit [Docket No. 97] be DENIED.

7.      Defendant's Pro Se Motion to Dismiss Indictment for Lack of Probable Cause on Grounds of False Facts in Information/Evidence [Docket No. 98] be DENIED.

8.      Defendant's Pro Se Motion to Suppress All Late and Untimely Evidence [Docket Nos. 99 and 112]  be DENIED.

9.     Defendant's Pro Se Motion to Dismiss Indictment for Lost of Exculpatory Evidence [Docket No. 100] be DENIED.

10.     Defendant's Pro Se Motion to Dismiss Indictment and Suppress All Evidence from Search and Seizure on May 16th [Docket No. 101] be DENIED.

11.     Defendant's Pro Se Motion to Compel Government to Disclose Identification Witness [Docket No. 102] be DENIED.

12.     Defendant's Pro Se Motion to Compel Government to Disclose Identification Witness [Docket No. 103] be DENIED.

13.     Defendant's Pro Se Motion to Suppress Evidence (T-Mobile/Metro PCS Exigent 'Ping') [Docket No. 104] be DENIED.

14.     Defendant's Pro Se Motion to Dismiss Indictment for Tampering with Evidence [Docket No. 116] be DENIED.

15.     Defendant's Pro Se Motion to Dismiss Indictment for Tampering with Witnesses and Evidence [Docket No. 117] be DENIED.

16.     Defendant's Pro Se Motion to Dismiss Indictment for Violation of Discovery and Inspection Order [Docket No. 118] be DENIED.

17.     Defendant's Pro Se Motion to Dismiss Indictment for Tampering with Witnesses and Evidence [Docket No. 119] be DENIED.


Dated: February 19, 2019

s/ David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge

**<u>NOTICE</u>**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).