# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal File No. 18-CR-149 (SRN/DTS) |
| Plaintiff, | |
| v. | ORDER |
| Norris Deshon Andrews, | |
| Defendant. | |

Norris Deshon Andrews, Sherburne County Jail, 13880 Business Center Dr., Ste. 200, Elk River, MN 55330, *pro se*

Daniel L. Gerdts, 331 Second Ave. S., Ste. 705, Minneapolis, MN, standby counsel for Defendant

Jeffrey Paulsen, United States Attorney's Office, 300 South Fourth Street, Ste. 600, Minneapolis, MN 55415, for the Government

SUSAN RICHARD NELSON, United States District Judge

Before the Court is the June 9, 2019 Letter from Defendant Norris Deshon Andrews [Doc. No. 220], which the Court construes as his Motion to Reopen the Suppression Hearing. For the reasons noted below, the motion is granted in part and denied in part.

At the May 28, 2019 status conference, Andrews requested that the pretrial suppression hearing be reopened in light of newly disclosed evidence. At that time, the Court gave Andrews a very limited opportunity to demonstrate the need for reopening the hearing,

requiring that he demonstrate good cause, based on evidence that was not available to him at the time of the prior hearings.[1]

In Andrews' motion, filed on June 13, he presents the following arguments in support of his request: (1) the mere fact of newly disclosed evidence, or "selective disclosure," supports his claim of governmental and prosecutorial misconduct, (Def.'s Mot. at 1, 4); (2) he wishes to enter the "late disclosed evidence" into the record, (*id.* at 2); (3) he claims to have proof that there was no probable cause for the stop of the GMC Yukon, based on bodycam videos disclosed several months after the final suppression hearing,[2] (*id.* at 3, 4); (4) he asserts that he has proof of ownership of the GMC Yukon, and therefore standing to challenge the search and seizure of the vehicle, (*id.*); (5) he contends that he has proof that officers planted the firearm inside the Yukon, in addition to drugs, (*id.*); (6) he asserts that he has "factual proof that false info was given to T-Mobile on exigent application about Defendant from alleged witnesses," based on newly disclosed bodycam footage of officers talking to witnesses, (*id.* at 4); and (7) "there are many more facts of constitutional violations by the government that pertain to dismissal or suppression of evidence motions by the defense that the Defendant tried to prove up in many of his motions and by the Government

---

[1] Defendant asserts that "this motion is made at the request of Judge Nelson." (Def.'s Mot. at 2.) The Court simply permitted Andrews to file a motion, limited to newly disclosed evidence, and to demonstrate good cause for reopening the hearing.

[2] In particular, he argues that this evidence refutes the Government's claim that Defendant's cell phone location information provided his location on the night of his arrest. (Def.'s Mot. at 3–4.)

suppressing the evidence till after the hearings." (*Id.* at 4.) The Court addresses these arguments below.

### 1. Governmental/Prosecutorial Misconduct

Andrews argues that the Government's disclosure of certain evidence after the suppression hearings supports his claim of governmental misconduct. (*Id.* at 1.) Previously, the Court addressed Andrews' claims of governmental and prosecutorial misconduct and bias in its May 8, 2019 Order, finding them unfounded. (*See* May 8, 2019 Order [Doc. No. 187] at 23–25, 50.) Again, the Court notes that a defendant bears a heavy evidentiary burden to show misconduct rising to the level of prosecutorial vindictiveness. *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004). The fact that the Government disclosed some evidence after the suppression hearings does not support Andrews' claims of vindictiveness or misconduct. Rather, the Government has acted in good faith to provide the discovery. Accordingly, this basis for reopening the suppression hearing fails.

### 2. Entering Late Disclosed Evidence into the Record

Defendant argues that reopening the suppression hearing is necessary to allow him to enter late disclosed evidence into the record. (Def.'s Mot. at 2.) Defendant will have the opportunity to introduce evidence at trial, which, if relevant and otherwise admissible, will be entered into the record. But Andrews' desire to enter this evidence into the record does not warrant the reopening of the suppression hearing.

### 3. Probable Cause for Stop of the Yukon

Defendant claims that newly disclosed bodycam evidence supports his claim of lack of probable cause to stop the GMC Yukon. (*Id.* at 3–4.) After the suppression hearings, the Government disclosed some additional bodycam video footage.

The Court thoroughly addressed the validity of the traffic stop in its May 8, 2019 Order on Defendant's objections to the magistrate judge's February 21, 2019 Order & R&R. (May 8, 2019 Order at 30–32.) In brief, Sgt. Joel Pucely testified that on the night in question, he observed a traffic violation, which provided sufficient probable cause for a stop. *See United States v. Miller*, 915 F.3d 1207, 1209 (8th Cir. 2019). Moreover, Sgt. Pucely observed a person entering the Yukon who matched the shooting suspect's description and Andrews' jail photo. Witnesses had identified Andrews as a suspect, video evidence of the shooting showed that the shooter matched Andrews' jail photo, and officers had Andrews' cell phone number and cell phone tracking data that led them to the area in question.

Andrews contends that newly disclosed evidence refutes the Government's claim that exigent cell phone location information led them to the general area in which he was found. (Def.'s Mot. at 3–4.) Given the two independent bases, noted above, that support the validity of the stop, it seems unlikely that newly disclosed evidence would refute them. However, to the extent that newly disclosed evidence supports Andrews' argument of lack of probable cause for the stop, the suppression hearing may be reopened on this limited basis.

### 4. Standing

Andrews also seeks to reopen the suppression hearing to present evidence in support of his challenge to the search and seizure of the GMC Yukon and evidence found within it. (*Id.* at 3.)

In Defendant's objections to the February 21, 2019 Order & R&R, he argued that a Bill of Sale established his ownership of the vehicle. (*See* May 8, 2019 Order at 32.) However, in ruling on the objections, the Court noted that its review was limited to the facts and evidence that were before the magistrate judge. (*Id.*) The Court found, "in that regard, it is unclear whether Andrews is the owner of the Yukon." (*Id.*) Nevertheless, even assuming that Andrews was the owner, the Court found that the search of the vehicle was proper. (*Id.* at 32–33.)

To the extent that Andrews now has evidence bearing on the ownership of the GMC Yukon, he may present it at the reopened motion hearing. That said, unless other additional, newly disclosed evidence supports his claim that the stop and search of the Yukon was unlawful, his motion to suppress will fail because the Court previously found that even if Andrews had standing, there was no constitutional violation.

### 5. "Planting" of the Firearm

Andrews contends that newly disclosed bodycam evidence supports his claim that officers planted the firearm in question, as well as drugs, in the GMC Yukon. (Def.'s Mot. at 3.) Based on this newly disclosed evidence, he seeks to reopen his motion to suppress the evidence seized in the search of the Yukon. The Court has already addressed his allegations that officers planted drugs in the vehicle, finding them without evidentiary support. (May 8,

2019 Order at 33.) However, to the extent that Andrews has newly disclosed bodycam video footage supporting his contention that officers planted the firearm in the Yukon, he may reopen the suppression on hearing on this limited basis.

### 6. T-Mobile Exigent Cell Phone Location Information

Andrews states that he has "factual proof that false info was given to T-Mobile on [the] exigent application about Defendant from alleged witnesses," based on newly disclosed bodycam footage of officers talking to witnesses. (Def.'s Mot. at 4.)

As noted in the May 8, 2019 Order, pursuant to the Stored Electronic Communications Act,

> a [service] provider . . . may divulge a record or other information pertaining to a subscriber . . . or customer . . . (not including the contents of the communications) . . . to a governmental entity, if the provider, in good faith, believes that an emergency involving danger or death or serious physical injury to any person requires disclosure without delay of information relating to the emergency.

18 U.S.C. § 2702(c)(4).

In the application for exigent cell phone location information, Sgt. O'Rourke stated, "[L]ife-threatening shooting of two victims, one was shot in the chest. Eyewitnesses know the suspect to currently be using [cell phone number]. Zetx shows a last name of a subscriber to be the same as the suspect." (Gov't Ex. 3 at 1.) Supplementing his application, O'Rourke further stated

> The suspect has been identified as using [cell phone number] by an eye witnesses [sic] to the crime. I am a police investigator with the Minneapolis Police Department and have been so for 20 years. On this day there was a shots fired call at 23rd and Freemont Avenue in [N]orth Minneapolis . . . at 1518 hours. The shooting being investigated occurred at 1642 hours at 1711 Freemont [sic] Avenue [N]orth in Minneapolis. The same suspect vehicle was

6

> described at both scenes. The second scene produced a video that showed the individual that is known to use the target number getting into the described suspect vehicle. The identified suspect also has an extensive criminal history involving weapons and narcotics. On this day during the second shooting he was said to be settling up with a debtor. The egregious part is that after shooting one of the victims multiple times the suspect got back out of his vehicle and made another attempt to finish him off, shooting at him a few more times. I believe that at this point it has only been a few hours and the suspect is armed and danger[ous] and is a threat to public safety after showing he can shoot multiple people and commit multiple shootings in a short period of time.

(*Id.* at 2.)

In his earlier arguments challenging the cell phone location information, Andrews asserted that Sgt. O'Rourke deliberately "lied" in order to obtain the information. (*See* May 8, 2019 Order at 27.) The Court presumed that the alleged "lies" stemmed from information attributed to a percipient witness and a shooting victim. (*Id.*) Regardless of whether a second volley of shots was fired during the second shooting or the non-victim witness was an eyewitness or merely a percipient witness—facts which Andrews contested—the Court found that the salient facts on which O'Rourke based his request were borne out by the evidence. (*Id.* at 28.) Specifically, percipient witnesses to the second shooting placed Andrews at the scene, identifying him as the gunman who shot two people. (*Id.*) Officers had reason to believe that Andrews had participated in a shooting an hour and a half earlier, in the same general area, based on the description of the suspect vehicle: a blue Chevy Tahoe with no license plates. (*Id.*) These events sufficiently provided the exigency necessary to obtain the voluntary disclosure of cell phone location information from Andrew's provider, T-Mobile, for a limited period.

Again, given all of this evidence, it seems unlikely that newly disclosed bodycam footage relating to the information that officers provided to T-Mobile will result in the suppression of evidence. In any event, to the extent that Andrews has newly disclosed bodycam footage that relates to the information that officers provided to T-Mobile, the suppression hearing may be reopened on this limited basis.

### 7. Other Constitutional Violations

Andrews contends that "there are many more facts of constitutional violations by the government that pertain to dismissal or suppression of evidence motions by the defense that the Defendant tried to prove up in many of his motions and by the Government suppressing the evidence till after the hearings." (Def.'s Mot. at 4–5.)

The instant motion is the means by which Andrews must identify any newly disclosed evidence and its potential impact on his suppression arguments. Vague references to additional "constitutional violations" will not suffice. The hearing will be reopened, limited to the newly disclosed evidence noted above, and for the purposes noted above. Because the Court has thoroughly considered Andrews' prior motions and given him several opportunities to argue for the suppression of evidence, no other bases for reopening the hearing are permitted. Therefore, the Court will not entertain any other issues, including issues previously ruled open, and previously admitted discovery.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Reopen the Pretrial Motions Hearing [Doc. No. 220] is

    **GRANTED in part** and **DENIED** in part.

Dated: June 19, 2019                     s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge