# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Norris Deshon Andrews,<br><br>Defendant. | Case No. 18-cr-149 (SRN)<br><br><br>**ORDER** |

Jeffrey S. Paulsen, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government.

Norris Deshon Andrews, No. 21579-041, USP-Terre Haute, P.O. Box 33, Terre Haute IN 47808, Pro Se Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Norris Deshon Andrews' Motion for Release [Doc. No. 358] pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Andrews seeks compassionate release and requests that the Court reduce his prison sentence because of the dangers posed by COVID-19. The Government filed a response in opposition to Mr. Andrews' Motion for Release. (Gov't's Opp'n [Doc. No. 362].)

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motion.

1

## I.    BACKGROUND

On October 4, 2019, a jury found Mr. Andrews guilty of being a felon in possession of a firearm. [Doc. No. 289.]  On March 16, 2020, the Court sentenced Mr. Andrews to a 262-month term of imprisonment.  [Doc. No. 326.]  Mr. Andrews is incarcerated at the United States Penitentiary ("USP") in Terre Haute, Indiana.  He has a projected release date of February 14, 2037.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed July 31, 2020).

### B.    Parties' Positions

Mr. Andrews filed a pro se motion for compassionate release on June 8, 2020. [Doc. No. 358.]  In his motion, Mr. Andrews asserts that he is being "housed" in "holdover status" in a unit with inmates quarantined after medical visits outside the facility.  (Def.'s Mot. at 1.)  He further refers to a previous letter that he filed with the Court, [Doc. No. 357], detailing certain complaints about the conditions in which he is being held.  (*See id.* (claiming that he has no access to the facility's commissary, phones, and email).)  In addition, he claims to have documented heart and lung conditions that put him at serious risk of death from the COVID-19 virus.  (*Id.*)  Finally, he asserts that he is not receiving sufficient treatment for his respiratory conditions.  (*Id.*) (stating that he has received an Albuterol inhaler rather than a twice-daily nebulizer as a doctor had prescribed).  He requests that the Court grant him compassionate release so that he can return home to live

with his wife. (*Id.* at 2.) In his reply, [1] he further asserts that he filed a request for compassionate release with prison officials, noting that, due to his incarceration, he does not have access to his medical records to support his position on release. (Def.'s Reply [Doc. No. 363] at 2-3)

The Government opposes Mr. Andrews' motion for three reasons. First, it argues that he has failed to demonstrate that he has exhausted his administrative remedies or, alternatively, that he failed to wait 30 days from the warden's receipt of a request for release before seeking judicial intervention. (Gov't's Opp'n at 4.) As a result, the Government asserts that the Court lacks jurisdiction. (*Id.*) Second, the Government contends that even if Mr. Andrews meets the administrative exhaustion requirements, his motion fails on the merits. Specifically, it asserts that Mr. Andrews' Bureau of Prisons ("BOP") Medical Records fail to demonstrate that he has either a heart or lung condition. (*Id.* at 6-7.) Third, the Government argues that the § 3553(a) sentencing factors weigh against compassionate release because of the violent nature of Mr. Andrews' prior offenses. (*Id.* at 9.)

## II.     DISCUSSION

### A.     The Law

A court may not modify a term of imprisonment once it has been imposed except pursuant to statute. *United States v. Kachina*, 2020 WL 2539270, at *1 (D. Minn. May 19,

---

[1]     Subsequently, Mr. Andrews filed a pro se motion [Doc. No. 364] seeking to withdraw his Reply on the grounds that he would like the Federal Defender's Office to represent him in connection with his motion. Counsel from the Federal Defender's Office has not entered an appearance on his behalf. Accordingly, the Court considers the Reply in connection with its ruling.

2020) (citing 18 U.S.C. § 3582(c)); *see also United States v. McIndoo*, 2020 WL 2201970, at *2 (W.D.N.Y. May 6, 2020). The compassionate release provision, as amended by the First Step Act, is such a statutory exception. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act[2] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release. *United States v. Stephenson*, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction[.]

---

[2] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

4

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id*. The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." [3] *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

---

[3] Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, 2020 WL 2404858 (D. Mass. May 12, 2020) (collecting cases and finding that courts "have the authority to consider other

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, 13-cr-20653, 2020 WL 2557077 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019) (further citations omitted)); *see also United States v. Edison*, No. 12-cr-225 (DWF), 2020 WL 3871447, at *2-3 (D. Minn. July 9, 2020).

Moreover, as the movant, the defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at

---

relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."). The Eighth Circuit has recently reinforced the district court's discretion to "expand the use of compassionate release" with the passage of the First Step Act. *United States v. Rodd,* No. 19-3498, 2020 WL 4006427, at *6 (8th Cir. July 16, 2020) (noting that it need not determine whether the district court erred in adhering to the Commission's policy statement because the district court "knew its discretion" to assume a more expansive definition of "extraordinary and compelling reasons" under the First Step Act) (internal quotation and citation omitted).

*4 (D.N.D. May 19, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)); *see also United States v. Morrison*, 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted); *United States v. Cabrera*, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted).

### B.      Analysis

#### 1.  Exhaustion of Administrative Remedies

The Court first considers whether it has the authority to grant Defendant's motion. As explained above, the compassionate release statute expressly provides that a court may only reduce a defendant's sentence pursuant to the provisions of the statute after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A).  In other words, to be entitled to relief pursuant to § 3582(c)(1)(A), a defendant generally must exhaust administrative remedies or wait 30 days from the warden's receipt of a request for release, as a precondition to seeking judicial intervention.

Although the Government argues that Mr. Andrews has not made an administrative compassionate release request with the BOP, (Gov't's Opp'n at 1), Mr. Andrews argues to the contrary.  Specifically, he claims he requested release from the prison administration and Warden, but his request was denied on both occasions. (Def.'s Reply at 2.)  However, he neither provides specifics on the date such requests were submitted nor provides

7

documentation evincing support for his claim. Accordingly, the Court is unable to find that Mr. Andrews has exhausted his administrative remedies in this regard, and he is therefore "not eligible for relief under the statute." *United States v. Coleman*, No. 15-cr-255 (SRN), 2020 WL 1922568, at *4 (D. Minn. July 14, 2020) (internal quotation omitted); *see also United States v. Lowe*, No. 16-cr-07, 2020 WL 2025760, at *1 (E.D. Tenn. Apr. 27, 2020) (finding inmate ineligible for relief under § 3582(c)(1)(A) because he did not provide documentation of an administrative request to the warden). The Court "cannot consider a motion for compassionate release for which the prisoner has not first sought relief from the BOP." *Coleman*, 2020 WL 1922568 at *4 (further citations omitted).

Indeed, as the Third Circuit observed in *United Sates v. Raia*, strict compliance with § 3582(c)(1)(A)'s exhaustion requirement is warranted here given both the BOP's "statutory role" and "efforts" in curtailing the virus' spread among the inmate population, and the Attorney General's own directive to the BOP under Section 12003(b)(2) of the Coronavirus Aid, Relief and Economic Security ("CARES") Act. 954 F.3d 594, 597 (3d Cir. 2020). Under the CARES Act, the Attorney General has directed the BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic[.]" Pub. L. No. 116-136, 134 Stat. 281 (2020); Memorandum for Director of Bureau of Prisons, March 26, 2020 https://www.bop.gov/coronavirus/. The *Raia* court determined that these actions demonstrate the BOP's willingness to take the defendant's request for home confinement seriously and prioritize it over other, non-COVID-19 related requests. *Id.* (noting that it "anticipate(s) that the statutory requirement will be speedily dispatched in cases like this

one.")  As in *Raia*, the Court therefore finds that the BOP must be granted an opportunity to meet, at a minimum, the 30-day statutory requirement to assess Mr. Andrews' compassionate release request.  *Id.* (finding that "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that the . . .exhaustion requirement is of added—and critical—importance.").

### 2. Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)

Even if the Court had authority to entertain Mr. Andrews' request, release under these facts is not warranted. As explained above, the Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling" reasons under § 3582(c)(1)(A) and states that an inmate's medical conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification.  *See* U.S.S.G. § 1B1.13 at cmt. n.1(A) (noting that the medical condition(s) must be "serious and advanced . . . with an end of life trajectory" or serious enough that they "substantially diminish the ability of the inmate to provide self-care" within the facility and "from which he or she is not expected to cover.").  Alternatively, an inmate's serious medical condition "in combination with" additional reasons may justify compassionate release.  *See* U.S.S.G. § 1B1.13 at cmt. n.1(A)-(D).

Here, Mr. Andrews appears to argue that the COVID-19 pandemic, in combination with his medical conditions, warrant compassionate release.   Although the Court does not intend to diminish the risk of COVID-19 in the federal prison system, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A).  *United States v. Fry*, No.

9

11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d at 597 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2018).

Against these standards, Mr. Andrews fails to present extraordinary and compelling reasons to warrant his release. Mr. Andrews, who is 35 years old, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications. CDC, *Coronavirus Disease 2019: People Who Are At Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 31, 2020). Nonetheless, he asserts that he has several conditions, which he alleges make him more vulnerable to becoming seriously ill should he contract COVID-19. (Def.'s Mot. at 2.) Although some of the listed conditions may establish a particularized susceptibility to COVID-19, including his lung and heart conditions, he offers no current documentation of any of his ongoing health concerns. *See United States v. Black*, No. 18-cr-646, 2020 WL 1930149, at *3 (N.D. Ohio Apr. 21, 2020) (denying motion for compassionate release, in part, because inmate offered no medical

records substantiating his claim of treatment for high blood pressure and diabetes); *United States v. Dickson*, No. 19-cr-251, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (finding that inmate failed to establish he is at a higher risk of contracting COVID-19 because he offered no medical records substantiating his asthma and respiratory issues); *Shamilov*, 2020 WL 2029600 at *2-3 (denying motion for compassionate release where inmate provided no documentation of underlying conditions) (citing *United States v. Gutierrez*, No. 05-cr-217 (RB), 2019 WL 1472320, at *2 (D.N.M Apr. 3, 2019)).

In fact, while he alleges that he has heart and lung conditions, the medical records submitted by the Government demonstrate the absence of any heart or lung problems. (Gov't's Opp'n, Ex. 2 at 2-6.) And, in a health screening on April 21, 2020, Mr. Andrews appears to have denied having any cardiovascular or respiratory conditions. (*Id*. at 1.) Moreover, contrary to his claim of breathing problems, Mr. Andrews' medical records demonstrate that he also denied any history of shortness of breath. (*Id*. at 3, 7.) Regarding his asthma, his records indicate that he was prescribed an Albuterol inhaler on April 21, 2020 for a possible pulmonary embolism, but it was for 45 days only with a stop date of June 5, 2020. (*Id*. at 9.) Since then, a subsequent report states that his pulmonary embolism is in remission, (*Id*. at 10), and his records do not indicate that his prescription for an Albuterol inhaler was ever renewed. Thus, based upon the present record before the Court, it appears that any asserted condition that required an inhaler was temporary and may have resolved. The Court is therefore unable to find that Mr. Andrews is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his conditions.

Moreover, even assuming his underlying medical conditions exist, Mr. Andrews has failed to demonstrate a particularized risk of contracting the virus. To date, while one inmate has unfortunately passed away from the virus at USP-Terre Haute, the facility currently has no reported cases of COVID-19. Moreover, eight inmates have also recovered from the virus. BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed July 31, 2020). Thus, while Mr. Andrews argues that the Government cited to the conditions of a facility that he is not confined in (Def.'s Reply at 2), USP-Terre Haute also appears to have been largely successful at stopping any further spread of the virus as of this writing. [4]

The Court therefore finds that Mr. Andrews' medical conditions do not warrant compassionate release. Mr. Andrews has not contracted the virus, and his medical conditions, in light of his relatively young age and access to medication, do not fall in the category of illnesses with an end-of-life trajectory, or other reasons, under the Guidelines. A reduction in sentence would not be consistent with the policy statements issued by the Sentencing Commission. The Court further finds that no other compelling circumstances support his request. In fashioning an appropriate sentence, the Court applied the § 3553

---

[4]   Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP Modified Operations, https://www.bop.gov/coronavirus/covid19 status.jsp (last accessed July 31, 2020).

12

factors to Mr. Andrews. There is no change in circumstances that supports the reduction of his sentence.

Moreover, Mr. Andrews has also not established that he does not present a danger upon immediate release. *See* 18 U.S.C. § 3582(c)(1)(A). Indeed, his underlying conviction involved shooting two people in the street, and as the Government notes, "he has been convicted four times of assaulting people—using a firearm in two of the instances." (Gov't's Opp'n at 8) (citing PSR ¶¶ 55, 61, 62).) Moreover, Mr. Andrews also has a history of being violent while incarcerated. (*Id.*) (noting that he was previously convicted for assaulting a guard). During his current BOP incarceration, he has been disciplined for assaulting a prison staffer. (*Id.*, Ex. 1.)

In sum, the Court finds that reducing Mr. Andrews' sentence would not "promote respect for the law, provide just punishment, afford adequate deterrence, []protect the public from further crimes" nor "reflect the seriousness of his offense." *United States v. Mount*, No. 16-cr-237 (SRN/BRT), 2020 WL 3998888, at *7 (citing 18 U.S.C § 3553 (a) (further citation omitted)). Taking into consideration all of the § 3553(a) factors, the Court continues to find that the sentence imposed is just and fair under the totality of the circumstances. *See*, *e.g.*, *United States v. Rodd,* No. 19-3498, 2020 WL 4006427, at *7 (8th Cir. July 16, 2020) (finding that the district court did not abuse its discretion in denying a compassionate release motion when lower court noted its consideration of the § 3553(a) factors at sentencing).

Accordingly, for all of the reasons stated above, Defendant's Motion for Release is denied.

### III. ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Pro Se Motion for Release [Doc. No. 358] is **DENIED.**

Dated: August 5, 2020                               s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge