# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal File No. 18-CR-149 (SRN/DTS)** |
| **Plaintiff,** | |
| **v.** | **ORDER ON § 2255 MOTION** |
| **Norris Deshon Andrews,** | |
| **Defendant.** | |

---

William C. Mattessich and Samantha Bates, United States Attorney's Office, 300 South Fourth Street, Ste. 600, Minneapolis, MN 55415, for the Government

Norris Deshon Andrews, Reg. No. 21579-041, USP Canaan, P.O. Box 300, Waymart, PA 18472, Pro Se

---

SUSAN RICHARD NELSON, United States District Judge

Pending before the Court are several motions filed by Defendant[1] Norris Deshon Andrews, pro se: (1) Motion to Vacate Under 28 U.S.C. § 2255 ("§ 2255 Motion" ) [Doc. No. 383]; (2) Application to Proceed in District Court Without Paying Fees or Costs ("IFP Application") [Doc. No. 384]; (3) Motion for Enlargement of Time [Doc. No. 386]; and (4) Opposition/Objection to Government's Request for Enlargement of Time [Doc. No. 390]. The Government opposes Andrews' § 2255 Motion ("Gov't's Opp'n") [Doc. No. 396].

---

[1] Although Andrews is the "petitioner" in this habeas proceeding, because all filings are made in the underlying criminal case, the Court will refer to him as "Defendant" or "Andrews".

Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies Andrews' § 2255 Motion and denies an evidentiary hearing and certificate of appealability. In addition, the Court denies as moot Andrews' IFP Application, Motion for Enlargement of Time, and Opposition/Objection to Government's Request for Enlargement of Time.

## I.    BACKGROUND

In June 2018, a grand jury indicted Andrews for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) and 924(e)(1). (Indictment [Doc. No. 1] Count 1.) The Indictment alleged that on May 15, 2018, Andrews knowingly possessed a loaded pistol, at which time he had six prior felony convictions: third-degree assault in 2006, fleeing a police officer in a motor vehicle in 2009, two second-degree assaults in 2011, fourth-degree assault on a correctional employee with demonstrable bodily harm in 2013, and second-degree burglary of a dwelling in 2016. (*Id.*)

In prior orders on several of Andrews' pretrial suppression motions, the Court addressed the underlying facts that led to Andrews' arrest and indictment. While the Court will not repeat all of this information here, some background information provides the necessary context for Andrews' § 2255 Motion.

### A.  Shooting, Identification of Suspect, and Surveillance

Andrews' federal felon-in-possession charge primarily stemmed from a May 15, 2018 shooting that occurred outside a Minneapolis apartment complex, injuring two people among a group of persons gathered outside. A security camera captured the incident on video. (May

8, 2019 Order [Doc. No. 187] at 2–3.[2])  The shooter was a Black man with a larger frame, long dreadlocks, glasses, a dark colored t-shirt, distressed jeans, and athletic shoes, who arrived at the scene and fled in a blue SUV that had no front license plate.  (*Id*.)  Witnesses identified the shooter as "N.O." or Norris Andrews, identified his companion as Montrel Tyson, and provided Andrews' cell phone number and photo.  (*Id*. at 3.)  Further investigation revealed jail photos of Andrews that appeared to depict the same person as the shooter.  (*Id*.)  A Google search of the cell phone number indicated that the subscriber's last name was Andrews.  (*Id*.)

Investigating officers also learned that approximately one hour earlier, in the same general area of the shooting, 911 callers reported that the driver of a blue Chevy Tahoe that lacked license plates was firing a weapon.  (*Id*. at 4.)  The driver was described as a large Black male with dark skin and long braided hair.  (*Id*.)

Officers submitted an exigent circumstances request to T-Mobile, the service carrier of the cell phone in question, to "ping" the phone in order to obtain real-time locations and call detail records each time the phone received service from a particular tower on May 15, 2018.  (*Id*.)  That night, after T-Mobile granted the exigent circumstances request, an investigator received emails approximately every 15 minutes with information about the phone's location.  (*Id*. at 5.)

---

[2] The Court issued two orders on May 8, 2019:  (1) a 53-page Order recounting the factual history of the case and addressing numerous pretrial arguments and objections [Doc. No. 187]; and (2) an eight-page order concerning Andrews' right to a speedy trial [Doc. No. 190] (the "Speedy Trial Order").  In the instant Order, the Court's citations to the "May 8, 2019 Order" refer to the 53-page ruling, while the Court's citations to the Speedy Trial Order refer to the shorter, more limited ruling.

### B. Stop and Search of the Yukon

When the cell phone appeared to be stationary at a specific Minneapolis address, Minneapolis Police Sergeant Joel Pucely conducted surveillance nearby. (*Id*. at 5–6.) While doing so, Sgt. Pucely observed a white GMC Yukon with Minnesota dealer plates drive by twice. (*Id*.) Eventually, two people got inside the vehicle, one of whom matched the description of the shooting suspect. (*Id*.) Sgt. Pucely observed the vehicle pull away from the curb without signaling or coming to a complete stop at a nearby stop sign. (*Id*. at 6.)

After making a stop of the Yukon, Sgt. Pucely approached the vehicle and saw the backseat passenger move around. (*Id*. at 6–7.) The driver identified herself as Dominique or Domonique Smith, although Andrews later asserted that her true name was Rachelle Hawkins. (*Id*. at 8.) The front seat passenger was Montrel Tyson. (*Id*. at 6.) After handcuffing the backseat passenger, who Sgt. Pucely recognized as Andrews, the officer performed a search of Andrews' pockets. (*Id*. at 7.) While Pucely performed the search of Andrews' pockets, another officer asked Andrews for his name, which Andrews provided, adding, "You got my I.D." (*Id*.) Sgt. Pucely responded, "I didn't get an I.D. from you, that's what I'm looking for," and repeated, "I didn't find an I.D. anywhere." (*Id*.) Sgt. Pucely placed Andrews' keys in a manila envelope. (*Id*. at 7–8.)

Booking photos taken of Andrews show a Black man with long dreadlocks and glasses, wearing a dark colored t-shirt, a jacket, distressed jeans, and black athletic shoes with red and white trim. (*Id*. at 8.)

Prior to towing the Yukon, officers conducted a search of the vehicle at the scene of the stop. (*Id*.) They found a 9mm handgun under the back seat in the vicinity of where

Andrews had been seated.  (*Id*.)  Later, investigators found a match between a friction ridge impression found on the gun and Andrews' right thumb fingerprint.  (*Id*. at 9.)  Test casings from the rounds in the handgun matched the casing left at the apartment building shooting. (*Id*.)

### C.  Search of Tahoe and Photo Array Identification

Through their investigation, officers located and seized the blue Tahoe.  (*Id*.) Minneapolis Police Sergeant Kelly O'Rourke prepared a search warrant affidavit for the vehicle.  (*Id*.)  In the application, he described security camera footage of the shooting, the shooter's distinctive appearance, witnesses' accounts of the shooting, corroborating cell phone records, and noted an association between Andrews and a blue Tahoe based on a March 2018 police incident report.  (*Id*. at 35.)  After obtaining a warrant, officers found a Minnesota driver's license, a Visa debit card, a temporary proof of insurance card, and a Robbinsdale Police Department citation, all of which bore Andrews' name.  (*Id*. at 9.)  Andrews challenged this search through pretrial motions.  The Government ultimately chose not to use the identification documents at trial.  (*See* July 24, 2019 Order [Doc. No. 245] at 5; Gov't's Resp. to Objs. [Doc. No. 223] at 1–2.)

Sgt. O'Rourke also obtained a court order for a DNA sample and fingerprint sample from Andrews, as well as a photo line-up.  (May 8, 2019 Order at 9.)  He visited one of the shooting victims with a photo array.  (*Id*. at 10.)  The photo array included a composite page with six photographs, followed by six sheets of paper containing the individual photographs from the composite page, one picture per page.  (*Id*.)  With certainty, the victim identified

Andrews as the shooter, and signed and dated the photograph of Andrews to signify the positive identification. (*Id*.)

### D. Procedural Background

#### 1. Pretrial and Trial

Former Federal Defender Reynaldo Aligada initially represented Andrews and filed a number of pretrial motions on his behalf. At a pretrial motions hearing at which Andrews announced his wish to represent himself, the magistrate judge permitted Andrews to do so for the limited purpose of the hearing. (Sept. 19, 2018 Hr'g Tr. [Doc. No. 62] at 8–10.) After Andrews accused Mr. Aligada of "working with the government" and losing exculpatory evidence (Mot. for Withdrawal of Counsel [Doc. No. 60] at 1), the attorney-client relationship became irretrievably broken and the Court permitted Mr. Aligada to withdraw in October 2018. (Oct. 18, 2018 Order [Doc. No. 64].) The Court then appointed Kevin O'Brien to represent Andrews. (Oct. 24, 2018 Order [Doc. No. 67].) Approximately two months later, Andrews also accused Mr. O'Brien of "conspiring to work with the government" and informed the Court that he wanted to "fire" him. (Def.'s Pro Se Letter [Doc. No. 92].) Shortly thereafter, the Court permitted Andrews to represent himself, with Mr. O'Brien serving as standby counsel. (Dec. 17, 2018 Minute Entry [Doc. No. 95].) After the standby attorney-client relationship became irretrievably broken, in April 2019, the Court allowed Mr. O'Brien to withdraw and appointed Daniel Gerdts as standby counsel. (Apr. 8, 2019 Minute Entry [Doc. No. 157]; Apr. 16, 2019 Order [Doc. No. 162].)

Mr. Gerdts served as standby counsel during subsequent motion hearings and at trial. At the conclusion of Andrews' nine-day jury trial in September and October 2019, the jury

found him guilty.  (Redacted Jury Verdict [Doc. No. 294].)  Pursuant to Andrews' request, Mr. Gerdts represented Andrews as counsel in the sentencing phase.  (Feb. 6, 2020 Sentencing Tr. [Doc. No. 343] at 1.)

### 2.  Sentencing

At sentencing, the Court applied the Armed Career Criminal Act ("ACCA") sentencing enhancement based on Andrews' conviction for third-degree assault and two convictions for second-degree assault.  (Sentencing Opinion [Doc. No. 325].)  The Court calculated a sentencing range of 262 to 327 months and imposed a 262-month sentence and a five-year term of supervised release.  (Sentencing J. [Doc. No. 326] at 2–4.)  The Court further imposed a special condition of supervised release prohibiting Andrews from gambling.  (*Id.* at 5.)

### 3.  Direct Appeal

Andrews, through his counsel, filed a direct appeal, raising three issues that are relevant here.  First, he argued that the Court erred in applying the ACCA sentencing enhancement because there was insufficient proof that Andrews was convicted of three ACCA-qualifying offenses.  *United States v. Andrews*, 861 Fed. App'x. 113, 115 (8th Cir. 2021).  Second, Andrews asserted that his convictions for second- and third-degree assault were not qualifying offenses under the ACCA.  *Id.*  Third, he argued that the Court violated his Sixth Amendment rights by concluding that his second-degree assault convictions occurred "on occasions different from one another."  *Id.*  The Eighth Circuit affirmed Andrews' conviction and sentence, (8th Cir. J. [Doc. No. 372]), and the U.S. Supreme Court denied his petition for certiorari.  (Cert. Notice [Doc. No. 375].)

CASE 0:18-cr-00149-SRN-DTS   Doc. 399   Filed 08/03/23   Page 8 of 43

### 4. Section 2255

Andrews now seeks collateral review under § 2255, raising 50 grounds for relief in an 84-page handwritten memorandum.[3]  (Def.'s Mem. in Supp. § 2255 Mot. ("Def.'s Mem.") [Doc. No. 385].)  As discussed in greater detail below, Andrews asserts numerous grounds for relief, which the Court broadly categorizes as follows:  (1) ineffective assistance of counsel; (2) a constitutional challenge to his conviction under 18 U.S.C. § 922(g); (3) Government misconduct; and (4) the Court's abuse of discretion with respect to a variety of rulings.

## II.   DISCUSSION

### A.  Section 2255 Motion

#### 1.  Standard of Review

Section 2255 provides that

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise

---

[3] Andrews also submits an eight-page handwritten reply memorandum [Doc. No. 397], docketed on July 6, 2023, and an additional two-page handwritten reply memorandum [Doc. No. 398], docketed on July 27, 2023.  The Court notes that pursuant to the Local Rules, unless a party obtains the Court's prior permission, a party seeking dispositive relief in a civil action is limited to 12,000 words for its memoranda and reply brief, if the text is set in proportional font, or 1,100 lines of text if set in a monospaced font.  L.R. 7.1 (f)(1)(A), (D).  The Local Rules do not provide for the filing of more than one reply memorandum.  L.R. 7.1 (i).  A pro se litigant is "not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).  However, the Court will endeavor to address or acknowledge all of Andrews' claims.  Many of them are internally repetitious and/or repeat arguments that Andrews has made in numerous prior motions.

subject to collateral attack, may move the court which imposed the sentence
to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

While § 2255 generally affords relief, it is only available in limited circumstances. As the Eighth Circuit has stated, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). The petitioner bears the burden of proof as to each ground for relief. [4] *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

---

[4] The Court considers Andrews' motion to be timely. *See* 28 U.S.C. § 2255(f)(1) (the one-year statute of limitations runs from the date on which the judgment of conviction became final). Pursuant to § 2255(f)(1), the deadline for Andrews to file his § 2255 motion was February 22, 2023, as his conviction became final when the U.S. Supreme denied certiorari one year earlier, on February 22, 2022. *United States v. McIntosh*, 332 F.3d 550, 551 (8th Cir. 2003) (stating that conviction becomes final upon completion of direct review when Supreme Court denies certiorari, giving petitioner one year from that date to file § 2255 motion).

Although Andrews' motion was not docketed in this Court until March 6, 2023, 12 days after the filing deadline, and the postmark on the envelope that accompanied his § 2255 Motion is blurry, the postmark reflects a February 2023 mailing date [Doc. No. 383-2 at 1]. Further, in Andrews' separate Motion for Enlargement of Time, he represents that he timely sent his § 2255 Motion on February 21, 2023. (Mot. for Enlargement of Time [Doc. No. 386] at 1.) The Government does not oppose Andrews' § 2255 Motion as untimely. (Gov't Opp'n at 5 n.1.) The Court accepts Andrews' representations and acknowledges his efforts, documented in the record, in seeking to meet the deadline. For all of these reasons, the Court deems the § 2255 Motion to have been timely filed. *See Grady v. United States*, 269 F.3d 913, 916 (8th Cir. 2001) (explaining that under the prison mailbox rule, a pro se prisoner's § 2255 motion is deemed to be filed "at the moment [the prisoner] delivered it to the warden for forwarding to the clerk of the district court").

### 2. Ineffective Assistance of Counsel

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).

To the extent Andrews claims that he was deprived of effective assistance of counsel during the periods when he represented himself, he must meet a high bar of showing that standby counsel deprived him of "actual control over his defense" or "undermined [his] appearance in the status of a pro se defendant." *McKaskle v. Wiggins*, 465 U.S. 168, 185 (1984). Andrews fails to meet this standard. As the Government notes, Andrews had the opportunity to represent himself and was at all times in full control of his defense. Moreover, he had every opportunity to consult with standby counsel at hearings and at trial, at which times he advanced many of the arguments that he repeats in his § 2255 Motion. (*See, e.g.*, Trial Tr. [Doc. Nos. 334, 338, 341] at 62, 64, 1055, 1161, 1276, 1302–03, 1898–99, 1948–49) (accusing prosecutors, police officers, Government witnesses, and the Court, in the jury's presence and outside the jury's presence, of dishonesty, tampering with evidence, and bias). Andrews' pro se performance was neither hindered nor undermined by standby counsel. To the extent that standby counsel assisted him with procedural matters, including filing documents, such assistance did not infringe Andrews' right to self-representation. *McKaskle*, 465 U.S. at 183–84.

### a. Mr. Aligada

As noted earlier, Mr. Aligada was first appointed as Andrews' trial counsel and filed several pretrial motions on his behalf.  Andrews asserts that Mr. Aligada lost or destroyed video evidence that would have established his alibi, thereby prejudicing his defense.  (Def.'s Mem. (Ground 1) at 1–2; Def.'s Reply [Doc. No. 397] at 4.)  He also contends that Mr. Aligada failed to sufficiently investigate the facts by not obtaining cell phone video from Andrews' girlfriend that allegedly showed officers breaking into the blue Tahoe.  (Def.'s Mem. (Ground 2) at 2–4; Def.'s Reply at 4.)  Andrews contends that such information would have led to the suppression of the evidence seized from the blue Tahoe, linking Andrews to the vehicle.  (Def.'s Mem. (Ground 2) at 2–4; Def.'s Reply at 4.)  Further, Andrews argues that Mr. Aligada failed to gather evidence from his girlfriend about how long the blue Tahoe was parked in one location and about Andrews' whereabouts on May 15, 2018, which would have supported an alibi defense.  (Def.'s Mem. (Ground 3) at 4–6.)  Andrews accuses Mr. Aligada, as well as Mr. O'Brien, of tampering with his pro se motions and filing them without his consent.  (Id. (Ground 50) at 83–84; Def.'s Reply at 4.)  Finally, Andrews argues that all three attorneys were ineffective for failing to challenge his mental competence to stand trial and to represent himself.  (Def.'s Mem. (Ground 7) at 14–15.)

### (1) Failure to Investigate

"[F]ailing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel." *United States v. Vazquez-Garcia*, 211 Fed. App'x 544, 546 (8th Cir. 2007) (citing *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994) (quotations omitted)).  However, even if the

failure to interview or gather mitigating evidence does not meet an objective standard of reasonableness, the defendant still needs to substantially show that but for the failure to interview the witness or gather the evidence, "there is a reasonable probability that the result of his trial would have been different." *Id.* (citing *Kramer*, 21 F.3d at 309) (quotations omitted). Andrews fails to meet both standards.

With respect to information about Andrews' whereabouts on the day in question and Mr. Aligada's failure to gather evidence from Andrews' girlfriend, Andrews provides no independent support or substantiation for such information. *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (finding that § 2255 petitioner who produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice, as he offered only speculation that he was prejudiced by counsel's failure to interview the witness). Mr. Andrews later procured and filed an affidavit from Rachelle Hawkins, the driver of the Yukon, but she later recanted her testimony. (Mar. 16, 2020 Sentencing Tr. [Doc. No. 344] at 12.)

With regard to video evidence allegedly lost on Andrews' girlfriend's cell phone that purportedly showed officers breaking into the blue Tahoe, the evidence seized as a result of that search—such as Andrews' driver's license and other identifying information—was not used at trial. As such, there is not a reasonable probability that the result of Andrews' trial would have been different, as other evidence linked him to the blue Tahoe. Nor is there a reasonable probability that any of the other purported evidence would have changed the result of Andrews' trial. Andrews repeatedly raised all of these issues prior to trial. He

had a full opportunity to obtain any evidence in support of his allegations through motion practice, evidentiary hearings, and motions during trial.

### (2) Tampering with Motions

As to the allegation that Mr. Aligada tampered with Andrews' motions, at the seven-hour long continuation of the suppression hearing on October 5, 2018, Mr. Aligada served as stand-by counsel. At the hearing, Andrews announced his intention to file several pro se motions, which he had in hand. (*See* May 8, 2019 Order at 11 ) (citing [Doc. Nos. 53–59, 65–66]). There is no indication whatsoever that Mr. Aligada altered any of Andrews' pro se motions. The right to self-representation is not "infringed when counsel merely helps to ensure the defendant's compliance with basic rules of protocol or procedure." *McKaskle*, 465 U.S. at 183. To the extent motions were withdrawn or resubmitted, it appears to have been due to Andrews' actions in representing himself. (*See* Dec. 17, 2018 Hr'g Tr. [Doc. No. 115] at 33 (Magistrate Judge Schultz, stating, "I am the one who said withdraw the motions; and the reason for that, right or wrong, is we had a situation where you were represented, then not represented, filed a bunch of motions, then represented again and now not represented again.").) Andrews presented certain motions to the Court at the October 5, 2018 hearing, and the Court filed them. (Oct. 5, 2018 Hr'g Tr. [Doc. No. 69] at 9–10.) Shortly thereafter, the Court granted Mr. Aligada's request to withdraw as counsel in October 2018 [Doc. No. 64]. In sum, there is simply no evidence to support Andrews' allegation that Mr. Aligada tampered with his pro se motions, and no showing of prejudice.

### (3) Failure to Seek Competency Evaluation

As noted, Andrews argues that Mr. Aligada, Mr. O'Brien, and Mr. Gerdts were all ineffective for failing to request that he undergo a mental competency evaluation. (Def.'s Mot. (Ground 7) at 14.) He contends that they "forced a mentally ill defendant with multiple learning disabilities that are well documented thru-out defendant's medical/mental records since a small child where he was in special aid [sic] classes thru-out school and thru adulthood, multiple prison stints, on & off medications/treatments to try to correct/control disabilities." (*Id.*) Consequently, Andrews argues, the lack of an evaluation forced him "to try to go it alone in trial against not one, but 'two' federal attorneys[.]" (*Id.*)

Under 18 U.S.C. § 4241(a), the defendant or counsel for the Government may file a motion for a hearing to determine the mental competency of the defendant. The Court must grant the motion for a hearing upon a showing that "there is reasonable cause to believe" a defendant is not competent, and the Court may order a psychological evaluation. 18 U.S.C. § 4241(b). Ultimately, in such proceedings, the court must determine whether the defendant is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of proceedings against him or to assist properly in his defense." *Id.* § 4241(d).

A criminal defendant has the right to waive legal representation and to represent himself if the waiver is "voluntary, and intelligently and knowingly made." *Faretta v. California*, 422 U.S. 806 (1975). That standard is met "if the trial court specifically informed the defendant of the dangers and disadvantages of self-representation, or if the entire record evidences the defendant knew and understood the disadvantages." *United States v.*

*Armstrong*, 554 F.3d 1159, 1165 (8th Cir. 2009).    Courts look to "'the background, experience, and conduct of the accused . . . [including] the defendant's past contacts with the criminal justice system and his performance at the proceeding at which he represented himself.'"  *Id.* (quoting *Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir. 2000) (per curiam) (quoted source and internal marks omitted)).  Prior to allowing a defendant to waive the right to counsel, a court must determine whether the defendant is competent to do so.  *United States v. Crawford*, 487 F.3d 1101, 1105 (8th Cir. 2007).

### (a) Competence

Throughout the criminal proceedings, Andrews demonstrated his mental competence. He filed numerous pro se pretrial motions in which he properly cited legal authority and evidence, he subpoenaed witnesses and cross-examined witnesses at pretrial suppression hearings and at trial, reviewed exhibits, used exhibits at trial, capably argued legal motions, lodged objections, and gave an opening statement and closing argument at trial.  Frequently, Andrews expressed confidence in his advocacy abilities.  (*See, e.g.*, Dec. 17, 2018 Hr'g Tr. at 8 (Andrews stating, when reminded that he would be responsible for cross-examining witnesses and following the Federal Rules of Criminal Procedure and Rules of Evidence, "We all know that I am well aware and know how to do that.  I just impeached the shit out of [the Government's] witnesses the last time we was through here, so we all know I know how to do that."); Pretrial Hr'g Tr. [Doc. No. 333] at 23 (Andrews asserting that he was better qualified to represent himself than standby counsel, stating, "I don't think [standby counsel] can do better than me because he don't know my case as well as me.").)

At the final pretrial conference in September 2019, the Court and Andrews engaged in a lengthy discussion about the risks of self-representation, reflected in 24 pages of the hearing transcript. (*Id*. at 2–26.) During the discussion, Andrews addressed the extent of his familiarity with the Federal Rules of Evidence and Criminal Procedure, which he had studied while in pretrial detention, conceded his lack of scientific training on fingerprint and DNA evidence, and understood the penalties that he faced, including a possible 15-year mandatory minimum sentence. (*Id*.) As to his past contacts with the criminal justice system, Andrews had previously represented himself at trial in state court. *See State v. Andrews*, Nos. A11-2200, A11-2201, 2012 WL 5834450 (Minn. Ct. App. Nov. 19, 2012), *review denied*, Aug. 19, 2014. In addition, in post-trial motions in federal court, Andrews moved for compassionate release from custody [Doc. Nos. 365, 366]. In short, Andrews' detailed pro se filings and oral advocacy belie any assertion that he failed to understand the nature and consequences of the charges against him such that a competency evaluation was warranted or that he failed to understand the risks of self-representation.

### (b) Knowing, Intelligent, and Voluntary Waiver

The record reflects that Andrews invoked his right to represent himself in various pretrial hearings and at trial, always demonstrating that he fully understood the nature and consequences of the proceedings against him and could properly assist in his own defense. See 18 U.S.C. § 4241(d). The Court repeatedly found that Andrews made a knowing, intelligent, and voluntary waiver of his right to counsel. (See, e.g., Sept. 19, 2018 Hr'g Tr. at 8–10; Oct. 5, 2018 Hr'g Tr. [Doc. No. 69] at 2–3; Dec. 17, 2018 Hr'g Tr. at 3–8, 10–11; Apr. 2, 2019 Hr'g Tr. [Doc. Nos. 164, 165] at 3, 82–84; Pretrial Hr'g Tr. at 2–26.)

16

The record fails to support Andrews' argument that his decision to represent himself was coerced.   At every juncture, the Court advised Andrews of the perils of self-representation.   Despite these warnings, Andrews consistently waived his right to counsel, knowingly and voluntarily, including at the final pretrial hearing:

> THE COURT:  Okay.  So just to be clear, despite all of these warnings, you wish to represent yourself at trial.  Is that true?
>
> ANDREWS:  Yes.
>
> THE COURT:  Alright.  Are you making that decision to waive your right to be represented by counsel, are you making it voluntarily?  Is anyone coercing you?
>
> ANDREWS:  Yes.
>
> THE COURT:  Someone is coercing you?
>
> ANDREWS:  Myself.
>
> THE COURT:  Okay.  Well, when one wants to do something, that's voluntary.  Would you agree that you're doing this voluntarily?
>
> ANDREWS:  Correct.
>
> THE COURT:  And this is of your own free will?
>
> ANDREWS:  Yes.
>
> THE COURT:  And nobody has coerced you or forced you or threatened you to waive or give up your right to counsel, have they?
>
> ANDREWS:  I feel like I [have] been threatened and forced to go pro se by the actions of the courts and the Government; but no, no one has put a gun to my head and said you have to represent yourself.   But the actions of the Government and the courts and prior counsel has left me with little to no choice in this matter.
>
> THE COURT:  Well, I would disagree with you.  You have a choice and you have a choice now and the choice is to have —

ANDREWS:  My choice is clear.  I'm going pro se.

THE COURT:  Okay.  Alright, Mr. Andrews.  I find that you are mentally competent and capable of waiving your right to counsel.  I find that your waiver is voluntary; that you are fully informed of the consequences of doing so.  And I will permit you to represent yourself at trial and Mr. Gerdts will remain as your standby counsel.

(Pretrial Hr'g Tr. at 26; *see also id.* at 8, 12.)

In conclusion, there is no basis for Andrews' claim that he lacked the mental competence to stand trial and to represent himself, nor is there any basis that the waiver of his right to counsel was involuntarily or not knowingly and intelligently made.  Accordingly, his counsel and standby counsel—Mr. Aligada, Mr. O'Brien, and Mr. Gerdts—were not ineffective for failing to seek a competency evaluation.

For all of these reasons, the Court therefore finds no support for Andrews' claim of ineffective assistance of counsel as to Mr. Aligada.

### b.  Mr. O'Brien

### (1) Tampering with Motions

Andrews likewise argues that Mr. O'Brien, who was next appointed as Andrews' counsel and standby counsel [Doc. No. 67], tampered with his pro se filings and lied to the Court, purportedly resulting in the loss of Andrews' speedy trial rights, multiple motions, and trial.  (Def.'s Mem. (Grounds 3, 4, 50) at 4–8, 83–84; Def.'s Reply at 4.)

As with similar allegations of ineffective assistance against Mr. Aligada, Andrews' claims against Mr. O'Brien lack support.  The docket reflects that Mr. O'Brien filed several motions on Andrews' behalf, and withdrew motions, as appropriate.  (*See* Doc. Nos. 75–82,

85–89.)  To the extent Mr. O'Brien refused to file motions that he considered baseless and withdrew pro se motions when Mr. O'Brien represented Andrews as counsel, his actions were dictated by his ethical and professional obligations.  (*See* Apr. 2, 2019 Hr'g Tr. at 30, 51.) Moreover, the Court gave Andrews a full opportunity to file and re-file motions in a pro se capacity, allowed him to file supplemental pretrial motions, permitted hearings on his objections to the magistrate judge's rulings, and reopened hearings.  The Court finds no basis for Andrews' assertion of ineffective assistance of counsel against Mr. O'Brien based on allegations of "tampering" with filings and lying to the Court.

Nor does the Court find that Mr. O'Brien's actions resulted in a constitutional violation of Andrews' speedy trial rights.  The Speedy Trial Act excludes any periods of delay caused by the filing of a motion from the calculation of the statutory speedy trial period.  18 U.S.C. § 3161(h)(1)(D).  Mr. O'Brien filed appropriate motions, and withdrew many of them shortly after filing [Doc. No. 89].  Andrews himself filed approximately 48 pro se pretrial motions labeled as such, as well approximately 12 pro se letters, including a letter seeking a continuance of the trial date.  The Court granted Andrews' motion for a trial continuance, although not on the grounds that Andrews provided, but because he broke his leg during recreational activities in jail, which required hospitalization and surgery.  (May 29, 2019 Order [Doc. No. 217] at 2–9.)  Thus, the periods of tolling caused by the filing of motions were largely caused by Andrews' own pro se motions, not the actions of Mr. O'Brien. (Speedy Trial Order [Doc. No. 190] at 7) ("Here, Andrews has been responsible for most of the delay, and has filed dozens of motions since July 24, 2018.").

In addition, for the reasons previously stated, the Court finds that Mr. O'Brien was not deficient for failing to seek a competency evaluation for Andrews.

For all of these reasons, the Court finds that Mr. Andrews' claim of ineffective assistance of counsel as to O'Brien fails to provide any relief.

### c.  Mr. Gerdts

Andrews also asserts numerous ineffective assistance of counsel claims against Mr. Gerdts, who served as his standby counsel during trial and directly represented him during his sentencing and appeal. (*See* Order Appointing Attorney [Doc. No. 162].) At the outset, the Court reiterates that Mr. Gerdts was not deficient for failing to seek a competency evaluation for Andrews, for the reasons previously stated.

### (1) Failure to Provide Jail Phone Records Prior to Trial

In Ground 48, Andrews faults Mr. Gerdts for his actions as standby counsel. (Def.'s Mem. (Ground 48) at 82.) Specifically, Andrews asserts that although Mr. Gerdts subpoenaed the Sherburne County Jail for certain phone records, he failed to provide copies of those records to Andrews prior to trial. (*Id.*) For its part, the Government contends that Andrews provides no particularized facts to support this claim and additionally does not demonstrate that access to these records would have changed the outcome of his trial. (Gov't's Opp'n at 17.)

The Court agrees with the Government. Andrews must "affirmatively prove prejudice," *Strickland*, 466 U.S. at 693, and he has made no effort to do so. He neither describes the contents of the phone records nor their relevance to his trial. (Def.'s Mem. at 82.) As such, he cannot meet his burden to show a reasonable probability that access to

these records would have resulted in his acquittal. *Strickland*, 466 U.S. at 694. Accordingly, the Court denies his claim for ineffective assistance of counsel based on Mr. Gerdts' failure to provide him copies of the Sherburne County Jail phone records.

### (2) Failure to Request Stay of Sentencing Pending *Borden*

In Ground 6, Andrews asserts that Mr. Gerdts should have requested a sentencing stay pending the outcome of *Borden v. United States*, 141 S. Ct. 1817 (2021). (Def.'s Mem. (Ground 6) at 11–12; Def.'s Reply at 5.) He argues that Mr. Gerdts' failure to do so led to an unconstitutional sentence enhancement under the ACCA for predicate offenses of second- and third-degree assault. (Def.'s Mem. (Ground 6) at 11–12; Def.'s Reply at 5.) In addition, in Grounds 8 and 9, Andrews directly challenges the Court's application of the sentencing enhancement, and devotes a portion of Ground 22 to this argument. (Def.'s Mem. (Grounds 8, 9, 22) at 15–17, 46.)

The Government responds that *Borden* does not affect the applicability of the ACCA to Andrews' sentence. (Gov't Opp'n at 21–22.) It argues that *Borden* only impacted predicate offenses involving recklessness, and that under Minnesota law, each of Andrews' predicate offenses required a purposeful or knowing degree of intent. (*Id.*)

The ACCA, 18 U.S.C. § 924(e), imposes a mandatory sentence enhancement on individuals convicted under 18 U.S.C. § 922(g) of being a felon in possession of a firearm who have three or more prior convictions for a "violent felony." A prior offense qualifies as a "violent felony" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Courts employ a categorical approach to assessing predicate offenses, "asking whether a state offense

necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" *Borden*, 141 S. Ct. at 1822 (quoting § 924(e)(2)(B)(i) and citing *Shular v. United States*, 140 S. Ct. 779, 783–84 (2020)).

Here, the Court identified three predicate offenses that qualified for a sentence enhancement under § 924(e)(2)(B)(i): Andrews' two convictions for second-degree assault in 2011 and his conviction for third-degree assault in 2006. (Mar. 16, 2020 Sentencing Tr. at 4–10; *see also* Sentencing Opinion.) The Court so held, in part, because binding Eighth Circuit caselaw has determined that these offenses constitute violent felonies under the ACCA. (Mar. 16, 2020 Sentencing Tr. at 4, 10); *United States v. Lindsey*, 827 F.3d 733 (8th Cir. 2016) (second-degree assault); *United States v. Wadena*, 895 F.3d 1075, 1076 (8th Cir. 2018) (third-degree assault).

*Borden* did not change this analysis. In *Borden*, as the Government correctly explains, the Supreme Court held that the ACCA's definition of "violent felony" covers "purposeful and knowing acts" but excludes offenses criminalizing "reckless conduct." *Borden*, 141 S. Ct. at 1826. As previously determined by the Eighth Circuit, both second- and third-degree assault under Minnesota law involve "purposeful and knowing acts." *See* Minn. Stat. § 609.02, subd. 10. (defining "assault" as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another.").

Indeed, the Eighth Circuit rejected the same argument regarding Andrews' predicate offenses on appeal. *Andrews*, 861 Fed. App'x at 118 (noting that Andrews' third-degree assault argument was "foreclosed by our precedent" and citing *Wadena*, 895 F.3d at 1076).

It again expressly held that "two second-degree-assault and one third-degree-assault conviction constitute three qualifying ACCA offenses" and affirmed this Court's sentencing enhancement. *Id.* The Eighth Circuit issued its opinion two months after *Borden* was decided, conclusively demonstrating that *Borden* does not reach Andrews' predicate offenses.

As a result, Andrews cannot establish the deficient performance and prejudice required to prevail on this ineffective assistance of counsel claim. For the same reasons, Andrews' direct challenges to this Court's sentencing enhancement under the ACCA also fail. Accordingly, the Court denies Andrews' requests for relief in Grounds 6, 8, 9, and the portion of Ground 22 that concerns his ACCA sentencing enhancement.

### (3) Failure to Raise Certain Purported Pretrial and Trial Defects on Appeal

Andrews also asserts that Mr. Gerdts "did the absolute bare minimum" and failed to appeal numerous rulings from the pretrial and trial proceedings, resulting in their waiver. (Def.'s Mem. (Ground 5) at 8–9.) Among the many rulings that Mr. Gerdts purportedly should have challenged, Andrews enumerates the following: (1) probable cause to stop the Yukon; (2) probable cause to search the Yukon; (3) the illegal search and seizure of the Yukon; (4) Andrews' standing to challenge the search of the Yukon; (5) alleged government misconduct relating to evidentiary issues, the search warrant, breaking and entering, and fraud on the courts; (6) the loss of exculpatory evidence from the Yukon; (7) Confrontation Clause issues related to the government's suppression of witness statements; (8) the Court's error in excluding Andrews' alibi witnesses pretrial and at trial; (9) the

23

Court's error in not granting a continuance or finding a mistrial after Andrews' computer was confiscated; and (10) the Court's error in admitting inadmissible evidence.[5] (*Id.* at 9.) Andrews asserts that Mr. Gerdts admitted that he did not want to challenge these rulings in order "to not 'water down' other issues that he felt were 'strong.'" (*Id.* at 10.)

In response, the Government contends that with respect to the evidentiary and pre-trial issues, Andrews does not articulate any grounds for an appellate court to find error, nor does he articulate any prejudice resulting from Mr. Gerdts' failure to raise these issues. (Gov't's Opp'n at 23–24.)   As to the alleged prosecutorial misconduct, the Government argues that Andrews did not present evidence of such misconduct at trial and fails to present it here. (*Id.* at 24.)   Unable to meet this burden, the Government asserts that Mr. Gerdts reasonably decided to omit these arguments in order to not dilute other nonfrivolous arguments on appeal. (*Id.* at 25.)

The Supreme Court has repeatedly rejected the notion that appellate counsel must raise every argument desired by the litigant. *See, e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (refusing to hold that an "indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); *Smith v. Murray*,

---

[5] In addition to the subjects listed in Ground 5, Andrews also includes "ineffective assistance of counsel" in the portions of his brief directly challenging the Court's rulings on these and other issues. (*See, e.g.*, Def.'s Mem. (Ground 11) at 23 (challenging the Court's denial of Andrews' standing to challenge the search of the Yukon); *id.* (Ground 12) at 25–26 (challenging the Court's refusal to suppress evidence found in the Yukon); *id.* (Ground 13) at 26–28 (challenging the Court's refusal to suppress cellphone location records).) To the extent Andrews challenges Mr. Gerdts' failure to raise additional arguments not listed in Ground 5, the Court's analysis applies equally to those arguments.

477 U.S. 527, 536 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (quoting *Jones*, 463 U.S. at 751–52). Indeed, "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed.  Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 582 U.S. 521, 533 (2017) (citations omitted). It is thus "difficult to demonstrate that counsel was incompetent" on this basis. *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  In the Eighth Circuit, "absent contrary evidence, 'we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.'"  *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008).

Nothing in Andrews' § 2255 Motion demonstrates that his qualms with Mr. Gerdts' performance are anything other than a dispute over strategy. Andrews acknowledges as much, citing Mr. Gerdts' letter in which he explained that he did not want to "water down" the strongest appellate arguments by presenting those urged by Andrews.  (Def.'s Mem. at 10.)  There is no evidence to the contrary.

Under the prevailing caselaw, Mr. Gerdts' decision to pursue only the strongest arguments does not amount to an objectively unreasonable performance.  And even if it did, Andrews has not proffered any evidence showing a "reasonable probability" that, but for Mr. Gerdts' unreasonable failure to raise certain arguments, he would have prevailed on his appeal. *Strickland*, 466 U.S. at 694.  The issues Andrews identifies that Mr. Gerdts

should have raised on direct appeal were raised by Andrews himself, pretrial and at trial, and were repeatedly rejected by this Court.  (*See, e.g.*, May 8, 2019 Order; June 19, 2019 Order [Doc. No. 224]; Sept. 3, 2019 Order [Doc. No. 270]; Sept. 4, 2019 Order [Doc. No. 271].)  Consequently, the Court denies Andrews' claim of ineffective assistance of counsel based on Mr. Gerdts' selection of arguments to raise on appeal.

In sum, for all of the forgoing reasons, the Court finds no grounds for collateral relief based on Andrews' claim of Mr. Gerdts' ineffective assistance.

### 3.  Constitutionality of Conviction Post-*Bruen*

In Ground 49, Andrews argues that his conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g) is unconstitutional following the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). (Def.'s Mem. (Ground 49) at 83.)   The Government first responds that Andrews cannot use *Bruen* to challenge his conviction because he did not raise this issue on direct appeal. (Gov't Opp'n at 13.)  Second, the Government asserts that binding caselaw affirms the constitutionality of § 922(g). (*Id.* at 14.)

Andrews did not argue on appeal that § 922(g) is unconstitutional under the Second Amendment. *See generally Andrews*, 861 F. App'x 113. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  Andrews does

not argue that he is "actually innocent," (*see* Def.'s Mem. at 83), so the Court must assess "cause" and "prejudice."

An intervening change in the law may be sufficient to establish cause for failing to raise an issue on direct review. *Jones v. United States*, 39 F.4th 523, 525–26 (8th Cir. 2022) (finding cause established where "the state of the law at the time of [the defendant's] appeal did not offer a reasonable basis upon which to challenge the guilty plea," and the Supreme Court subsequently issued an opinion making the defendant's claim "reasonably available"). Here, the Eighth Circuit decided Andrews' appeal in August 2021 and the Supreme Court issued *Bruen* in June 2022. This timeline explains Andrews' failure to raise *Bruen* on direct appeal. (*See* Def.'s Reply [Doc. No. 397] at 2–3.)

However, even if he has established cause, Andrews cannot demonstrate prejudice, i.e., that an error "worked to his actual and substantial disadvantage." *Jones*, 39 F.4th at 526. In *Bruen*, the Supreme Court held that any regulation of the Second Amendment's right to bear arms must be "consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126, 2130. This focus on text and history supplanted the means-end analysis previously employed by the Circuits. *Id.* at 2129–30. Still, the Supreme Court reaffirmed that the right to bear arms is "subject to certain reasonable, well-defined restrictions." *Id*. at 2156.

Following *Bruen*, at least one Circuit has found § 922(g) unconstitutional as applied to certain predicate felony convictions. *See, e.g.*, *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (finding § 922(g)(1) unconstitutional as applied to a defendant previously convicted of making a false statement on his food stamp application); *see also Atkinson v. Garland*,

70 F.4th 1018 (7th Cir. 2023) (refusing to find § 922(g)(1) presumptively constitutional on the current record in a case involving a defendant previously convicted of felony mail fraud and remanding to the district court for further development of the historical analysis in light of *Bruen*). Not so in the Eighth Circuit.

In *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023), the defendant appealed the district court's denial of his motion to dismiss his indictment under § 922(g), arguing that the statute was unconstitutional as applied because his predicate drug offenses were non-violent. The Eighth Circuit rejected this argument on three grounds. First, the court looked to *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), where the Supreme Court affirmed an individual right to keep and bear arms but noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 502. Nothing in *Bruen* displaced this statement. *Id.* (citing *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring), at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.), and at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).

Next, the Eighth Circuit canvassed historical prohibitions on the right to possess firearms by certain groups of people, including Native Americans, religious minorities, and early Americans who refused to swear an oath of loyalty. *Id.* at 502–504. It found that this historical record "supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society." *Id.* at 504. Finally, it found that this historical analysis also supported the constitutionality of § 922(g) as an effort to limit possession by particularly dangerous groups. *Id.*

Ultimately, the Eighth Circuit found that Congress acted within this historical tradition when enacting § 922(g)(1). *Id.* at 505–06.  Although it decided *Jackson* on an as-applied challenge, in a later case, the court subsequently reiterated that "there is no need for felony-by-felony determinations regarding the constitutionality of § 922(g)(1). The longstanding prohibition on possession of firearms by felons is constitutional." *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) (affirming district court's denial of defendant's motion to dismiss the indictment). *Jackson* is binding on this Court.

With the constitutionality of § 922(g)(1) solidly confirmed in this Circuit, Andrews cannot demonstrate the prejudice necessary to overcome his procedural default.  Nor can he prevail on the merits of his argument.  Accordingly, the Court denies Andrews' request for relief based on *Bruen*.

### 4.  Government's Alleged Misconduct

Andrews asserts numerous claims of government misconduct against police, prosecutors, and the three attorneys who served as his counsel or standby counsel.  He requests an evidentiary hearing to develop his claims.

Among his § 2255 claims, Andrews asserts a familiar litany that representatives of the Government:  (1) fabricated evidence, withheld exculpatory evidence, and engaged in vindictive prosecution (Def.'s Mem. (Ground 16) at 34–37); (2) falsely represented that officers used T-Mobile pings to trace Andrews' location on the night of his arrest (*id*. (Ground 27) at 51–52); (3) falsely represented witness identifications of Andrews as a shooting suspect (*id*. (Ground 28) at 52–54); (4) falsely represented that Office Pucely had probable cause to stop the GMC Yukon (*id*. (Ground 29) at 54–56); (5) broke into the

Chevy Tahoe and planted evidence (*id*. (Ground 30) at 56–58); (6) tampered with or planted the gun that was seized from the Yukon (*id*. (Ground 31) at 58–59); (7) identified witnesses whom the Government did not call to testify at trial (*id*. (Ground 32) at 59–60); (8) presented false Shot Spotter audio evidence (*id*. (Ground 33) at 61–62); (9) produced a different search warrant to Andrews than the warrant introduced in court (*id*. (Ground 34) at 62–63); (10) prepared and used at trial a "false, made-up, fake ballistic testimony report" (*id*. (Ground 35) at 63–64); (11) used falsified information regarding the Tahoe in a search warrant application (*id*. (Ground 36) at 64–65); (12) falsely represented that it had obtained a grand jury subpoena or search warrant to obtain Andrews' phone records (*id*. (Ground 37) at 67–68); (13) elicited false testimony from witnesses (*id*. (Ground 39) at 68–71); (14) tampered with and intimidated defense witnesses (*id*. (Ground 40) at 71–72); (15) lost or released exculpatory evidence, specifically, the Yukon itself (*id*. (Ground 41) at 72–74); (16) made false statements in the affidavit to T-Mobile for exigent cell phone location information (*id*. (Ground 42) at 74); (17) lied in the search warrant application for the search of the Tahoe (*id*. (Ground 43) at 75); and (18) used false, forged, or made-up identification statements (*id*. (Ground 44) at 76).  As noted earlier, Andrews did not raise these issues on direct appeal, nor was Mr. Gerdts ineffective for failing to raise them.

Even if these claims were not procedurally defaulted, they would fail on the merits. Prior to his direct appeal, Andrews repeatedly raised these misconduct allegations.  The Court has consistently rejected Andrews' assertions, finding them unsupported, baseless, and speculative.  (*See, e.g.*, May 8, 2019 Order at 27–40, 47–50 (addressing cell phone location pings, the search and stop of the Yukon, the search of the Tahoe, allegedly false

ballistics reports, a "forged" search warrant, allegedly false testimony from police officers; alleged destruction of exculpatory evidence, and vindictive prosecution); June 19, 2019 Order at 3–8 (addressing claims of vindictive prosecution, cell phone pings, search and seizure of the Yukon, alleged planting of the firearm); Sept. 3, 2019 Order at 5–29 (addressing claims that investigators "lied" to T-Mobile, bodycam footage regarding witness identifications, allegedly destroyed exculpatory evidence, probable cause for the stop of the Yukon, the constitutionality of the T-Mobile ping tracking information, allegedly outrageous Government conduct); Sept. 4, 2019 Order at 1–4 (addressing Government's alleged discovery violations).   Andrews' efforts to relitigate the Court's rulings on alleged Government misconduct fail because they are unsupported and speculative, as the Court has repeatedly found in its prior rulings, which are incorporated by reference here.  His claims for collateral relief on these bases are therefore denied.

### 5.  Court's Alleged Abuse of Discretion

As with Andrews' allegations of Government misconduct, Andrews also asserts numerous claims that the Court abused its discretion in its rulings on his suppression motions, at trial, and at sentencing.[6]   Specifically, he identifies purported abuse of discretion for the following judicial conduct: (1) applying a sentencing enhancement for obstruction of justice (Def.'s Mem. (Ground 10) at 18–21); (2) finding Defendant had no standing to challenge the search of the Yukon (*id.* (Ground 11) at 21–23); (3) denying

---

[6] The Court has already addressed Andrews' claims regarding the application of the ACCA enhancement and *Borden* (Def.'s Mem. (Grounds 8, 9, and a portion of Ground 22)) in its discussion of his ineffective assistance claims on the same basis.

motion to suppress evidence seized from search of the Yukon (*id*. (Grounds 12 & 37) at 25–26, 65–66); (4) denying motion to suppress cell-site location evidence (*id*. (Ground 13) at 26–29); (5) "refusing to acknowledge" that Minneapolis police officers planted and tampered with evidence in the Yukon and denying suppression of evidence on this basis (*id*. (Ground 14) at 29–31); (6) "attempting to stop [] late [disclosed] evidence from being used at reopened hearing (*id*. (Ground 15) at 31–34); (7) refusing to dismiss Indictment in light of Government's alleged misconduct/outrageous conduct (*id*. (Ground 16) at 34–37); (8) "limiting evidence at re-opened suppression hearing [and] favoring/protecting Government" (*id*. (Ground 17) at 37–38); (9) manipulating speedy trial rights by telling standby counsel to withdraw motions without Defendant's consent (*id*. (Ground 18) at 38–40); (10) allowing notice of alibi to go unanswered by the Government (*id*. (Ground 19) at 40–42); (11) excluding alibi defense witnesses and denying witness subpoenas in the middle of trial (*id*. (Ground 20) at 42–43); (12) committing "abuse of discretion thru-out trial on multiple issues/objection[s]" including U.S. Marshals confiscating computer, Court refusing to grant a continuance, and requiring leg restraints at trial (*id*. (Ground 21) at 44–45); (13) erring at sentencing on various issues (*id*. (Ground 22) at 45–46); (14) causing the loss of exculpatory evidence by delaying proceedings (*id*. (Ground 23) at 47); (15) exhibiting bias (*id*. (Grounds 24 & 25) at 48–50); (16) refusing to allow defense witnesses to testify at pretrial hearings and at trial (*id*. (Ground 26) at 50–51); (17) exhibiting "close-minded[ness] to the greater weight of the evidence as to cell site location evidence and request for a *Franks* hearing (*id.* (Ground 45) at 77–78); (18) treating Indictment as a "shooting" instead of felon in possession of a firearm charge (*id*. (Ground 46) at 79–80);

and (19) ruling that Andrews' "prior counsel (state court counsel) was a[n] 'alibi witness' and excluded counsel/investigator from testifying at trial (authenticity of her emails to federal court)" (*id*. (Ground 47) at 81).

The Court first notes that Andrews did not raise these claims on direct appeal and his counsel was not deficient for failing to raise them, as the Court discussed earlier.  The Court also observes that "abuse of discretion" is a standard of review.  The phrase, on its own, does not identify a constitutional or legal violation necessary for collateral relief.  *See* 28 U.S.C. § 2255(a).   In any event, the Court addresses Andrews' grounds for relief based on judicial rulings and conduct, which also fail on the merits.

### a.  Prior Rulings

As to the majority of these claims, the Court has previously rejected them in prior rulings, in detail, and adopts the same reasoning here.  (*See* May 8, 2019 Order at 18, 30, 33, 36–37, 40–41, 47–50 (addressing allegations of evidence planted in the Yukon, the validity of the search of the Yukon and standing to challenge the search; opportunity to offer evidence at hearings; magistrate judge allegedly instructing counsel to withdraw motions without Defendant's consent; judicial bias; *Franks* hearing re: cell location evidence; and allegedly false testimony at motions hearings); Speedy Trial Order at 4–8 (addressing allegations of manipulation of speedy trial rights); June 19, 2019 Order at 3–9 (discussing use of late disclosed evidence and denial of reopening suppression hearing; probable cause for stop of the Yukon and standing to challenge search; allegations of "planted" firearm in the Yukon; and cell phone location information); Mar. 16, 2020 Sentencing Tr. at 12–13 (addressing applicability of sentencing enhancement for

obstruction of justice); Sept. 3, 2019 Order at 25–26 (addressing cell phone location evidence; and denying motion to dismiss Indictment based on "outrageous Government conduct"; Sept. 4, 2019 Order at 1–4 (addressing Defendant's motion to reopen suppression hearing on grounds of late disclosed evidence that Defendant argued could have been used to impeach Government witnesses, provide alibi evidence, and exonerate him); Pretrial Hr'g Tr. at 50, 80 (granting Government's Motion in Limine to Exclude Alibi Evidence where Andrews failed to comply with disclosure rules requiring identification of alibi witnesses).)

### b.  New Grounds

To the extent that the Court has not previously addressed some of Andrews' claims of alleged abuse of discretion at trial (*see, e.g.,* Def.'s Mem. (Grounds 20 & 21)) and at sentencing (*see. e.g.*, *id.* (Ground 22)), they likewise fail.

### (1) Subpoenas

Starting with the denial of witness subpoenas, Andrews argues that the witnesses in question would have been relevant to his alibi defense.  (*Id.* (Ground 20) at 42–43.) However, to the extent the witnesses were intended to support an alibi defense, the Court excluded any alibi defense due to Andrews' failure to comply with the disclosure requirements of Fed. R. Crim. P. 12.1.  (Pretrial Hr'g Tr. at 50, 80.)

To the extent Andrews argues that the Court denied all of his requests for subpoenas, he is incorrect.  On May 17, 2020, the magistrate judge granted Andrews five trial witness subpoenas out of 60 that he had requested and informed Andrews about how to prepare and serve them.  (May 17, 2019 Sealed Order [Doc. No. 199]; Trial Tr. at 152–53.)

Andrews did not file an objection to the ruling.  During trial, Andrews voiced his intention to subpoena 60 witnesses.  (Trial Tr. at 156, 158.)  The Court declined to permit the issuance of 60 witness subpoenas, mid-trial, and directed Andrews to speak with counsel for the Government to determine whether witnesses whom Andrews sought to subpoena would be called as trial witnesses for the Government.  (*Id*. at 160–61.)  The Court's rulings with regard to subpoenas provide no basis for collateral relief here.

### (2) Laptop and Trial Materials

The Court turns next to the confiscation of Andrews' trial laptop and "defense paperwork," (Def.'s Mem. (Ground 21) at 44), and the Court's refusal to grant a continuance in light of the confiscation.  (*Id*.)  The U.S. Marshals temporarily confiscated Andrews' laptop because its Internet search history demonstrated that Andrews was accessing pornographic websites during trial.  (Trial Tr. at 1045.)  It appears that staff at the Sherburne County Jail (where Andrews was held in detention) may have taken some of his defense paperwork, but the Government agreed to provide Andrews with duplicate copies of any previously disclosed discovery materials that he needed.  (*Id*. at 1046–54.) As to any request for a continuance on this basis, after ensuring that the Government would provide previously disclosed materials to Andrews, the Court again offered Andrews the opportunity for Mr. Gerdts to represent him for the remainder of trial, but he refused.  (*Id*. at 1054–58.)

When Andrews later moved for a mistrial based on the missing flash drives, the Court and Andrews had the following colloquy:

THE COURT: [T]he reason you don't have your flash drives is due to your own apparent misuse of your computer during trial.  To be clear for the record, the United States Marshal Service came to the Court with credible evidence that you were viewing pornography during trial on your computer. They were concerned that possibly you had downloaded it onto the flash drives, but they didn't know one way or the other, but nobody accused you of doing that.

THE DEFENDANT:  You did.

THE COURT: Which is why the Court initially confiscated the flash drives so they could be reviewed.

THE DEFENDANT: And you did.

THE COURT:  When I determined that the flash drives were password protected, I concluded that I would not have the flash drives reviewed, because I wanted to proceed with the case.

I have never had any communication, of course, with Sherburne County about this and what they choose to do for their reasons is up to them.  When you came to court this morning you advised the Court that the flash drives had been confiscated at the Sherburne County Jail.

THE DEFENDANT: Um-hum.

THE COURT:  Nonetheless, it appears to me that you are still capable of mounting a defense.  You have access to your computer.  The Dropbox with the case materials.  You are still ably being assisted by standby counsel.  You have piles of paper discovery next to you, and I have asked the Government, and the Government has complied with my request, that you be provided with any discovery in the case that would have been on the flash drives— body cam video, other exhibits and the like.  And this morning on a number of occasions, in fact, the Government has provided this information to you—

THE DEFENDANT:  No they haven't.

THE COURT:  —to assist you with [your] defense.  At no time did you request something from them that they did not have available to you.  So for those reasons, the motion for a mistrial is denied.

36

(*Id.* at 1158–59.)  The Court finds no grounds for collateral relief with respect to any of these issues concerning Andrews' laptop, defense paperwork, or flash drives.

### (3) Leg Restraints

Andrews also asserts that the Court abused its discretion by "[a]llowing the U.S. Marshals to keep leg restraints on the defendant while the jury was present/in [the] courtroom for days on [end] of trial."  (Def.'s Mem. (Ground 21) at 44.)  As a security measure during trial, Andrews wore leg restraints (not bolted to the floor) that did not prevent him from standing or moving outside the presence of the jury.  Due to this security measure, the movements of Andrews, standby counsel, and counsel for the Government were equally limited.  Throughout trial, counsel and Andrews remained stationery, with skirted tables and/or lecterns concealing their legs, and they did not move in the presence of the jury.  For example, any time Andrews or counsel wished to approach a witness, one of the court clerks conveyed exhibits to the witnesses.  (Pretrial Hr'g Tr. at 103.)

While visible shackling of a criminal defendant "undermines the presumption of innocence and the related fairness of the factfinding process," and diminishes the right of the accused to secure a meaningful defense, a trial judge possesses the discretion to require restraints on an individual basis, when justified by a specific state interest, such as maintaining security in the courtroom, preventing escape, or to preserve courtroom decorum.  *Deck v. Missouri*, 544 U.S. 622 (2005) (holding that visibly shackling defendant during penalty phase of capital trial without justifiable state interest violates due process).  No legal violation occurred here.  In light of Andrews' potential for violence, his past angry interactions with the Court, and past disciplinary history, the Court found it necessary to

utilize shackles in the least restrictive means available, for reasons of safety. *United States v. Honken*, 541 F.3d 1146, 1163 (8th Cir. 2008) (finding no due process violation where, for reasons of safety, criminal defendant wore leg shackles bolted to the floor and stun belt during jury trial, but did not move in the presence of the jury, and table skirts concealed his shackles and floor bolt, and shackles that did not make noticeable noise during ordinary movements when seated or when standing). Nor has Andrews presented any evidence that any member of the jury was ever aware of the leg restraints. *Id*. (noting lack of evidence that jury members were aware of shackles and floor bolt). Thus, the Court did not abuse its discretion by requiring the use of leg restraints under these circumstances.

### (4) Evidence Regarding Shootings

Andrews also argues that the Court "allowed the Government to prove up a shootings [sic] while defendant was only on trial" for being a felon in possession and that "[n]o connecting [state] charge of assault . . . warranted allowing the Government to show shooting videos[.]" (Def.'s Mem. (Ground 21) at 44.) As the Court explained when ruling on cross motions in limine concerning shootings, evidence of the shootings was direct evidence of an element of the crime charged, showing Andrews' possession of the gun, and not Rule 404(b) evidence. (Pretrial Hr'g Tr. at 40, 65.) Moreover, the Final Jury Instructions made clear that Andrews was only on trial for being a felon in possession of a firearm:

INSTRUCTION NO. 12

The defendant is not on trial for any acts, conduct, or crimes not specifically charged in the indictment.

Members of the jury, you heard evidence relating to the shooting and wounding of Kevin Ford and Derrick Blanton on May 15, 2018.  You also heard evidence about an earlier shots-fired incident the same day and a shots-fired incident several days earlier.

The defendant is not charged in this case with shooting Mr. Ford or Mr. Blanton, or with the earlier shooting incidents.  He is charged solely with being a felon in possession of a firearm.  Thus, you may use the evidence relating to the shooting incidents only to help you decide whether the defendant possessed the firearm with which he is charged and, if so, whether he did so knowingly.

(Final Jury Instr. No. 12 [Doc. No. 290].)  In sum, there is no basis for collateral relief based on evidence of the prior shootings at trial.

## (5) Vague Claims

The rest of Andrews' bases for relief in Ground 21 are too vague for the Court to address.  For instance, he asserts that the Court "abused its discretion" by:  admitting evidence and then "without grounds or proper reasoning" ordering it removed, testifying to evidence from the bench; admitting inadmissible evidence; and allowing law enforcement officers and agents to lie or present knowingly perjured testimony.  (Def.'s Mem. (Ground 21) at 44.)  These vague claims provide no basis for collateral relief.  *See Mann v. United States*, 12 F.3d 1102 (8th Cir. 1994) (finding district court properly rejected § 2255 claims asserting ineffective assistance as either too vague or failing to show prejudice).

## (6) Sentencing

In Ground 22, Andrews asserts that the Court erred on sentencing matters.  First, he argues that the Court erred by "agreeing with the PSR" in the following ways:  (1) that the gun Andrews allegedly possessed had been stolen; (2) that Andrews "committed any

impropriety by claiming to own the GMC Yukon and that he obstructed justice in doing so"; (3) that the defendant's base offense level was 24 instead of 20; (4) "certain offense-level increases related to obstruction of justice, possession of a stolen firearm, use/possession of the firearm in connection with another felony offense and relatedly, the overall offense level."  (Def.'s Mem. (Ground 22) at 45–46.)  Andrews raised these objections to the Presentence Report ("PSR") at sentencing, (Def.'s Position on Sentencing [Doc. No. 309] at 1–15), and the Court overruled them.  (Mar. 16, 2020 Sentencing Tr. at 11–12.)  The Court adopted the findings in the PSR and found that:  (1) the evidence at trial established that the gun in question had been stolen, therefore, a two-level increase in Andrews' offense level was appropriate; (2) the evidence at trial established that Andrews more likely than not used a firearm to shoot two victims in a felony offense, and was then found guilty of illegally possessing the firearm that he used during the assault, subjecting him to a four-level offense increase; (3) because Andrews committed the offense after sustaining at least two felony convictions for a crime of violence, under the Sentencing Guidelines, § 2K2.1(a)(2), his base offense level was 24; and (4) Andrews falsely claimed to be the owner of the white Yukon in order to establish standing to challenge the seizure of the gun, and procured and filed a false affidavit from the driver of the Yukon to support his claim, thereby warranting a two-level enhancement for the obstruction of justice.  (*Id.*) The Court finds no support for Andrews' claims that he is entitled to collateral relief related to these findings.

Second, Andrews argues that the Court erred at sentencing by applying an enhanced sentence under the ACCA. (Def.'s Mem. (Ground 22) at 46.) The Court has separately addressed this issue, *supra* at II.A.2.c.(2), and finds that it affords no relief.

Accordingly, for all of the foregoing reasons, the Court finds that Andrews is not entitled to collateral relief for any of the grounds asserting that the Court abused its discretion or otherwise erred.

### 6. Evidentiary Hearing

A § 2255 motion may be dismissed without a hearing if: (1) the defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that Andrews' allegations fail to meet either requirement for a hearing, and, despite Andrews' arguments to the contrary, (Def.'s Second Reply [Doc. No. 398]), the record includes all the information necessary for the Court to rule. *Id*. Accordingly, no evidentiary hearing is required.

### 7. Certificate of Appealability

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A Certificate of Appealability cannot be granted unless the petitioner

"has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  Such a "showing" requires that he demonstrate "that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, Andrews has not made such a showing, and

thus is not entitled to a Certificate of Appealability.

### B.  Remaining Motions

Also pending before the Court are the following pro se motions filed by Andrews

related to his § 2255 Motion:  (1) IFP Application [Doc. No. 384]; (2) Motion for

Enlargement of Time to File [Doc. No. 386]; and (3) Motion in Opposition to

Government's Request for Enlargement of Time [Doc. No. 390].

Because this Court has found that Andrews is not entitled to relief under § 2255, his

IFP Application is denied as moot.

In his March 6, 2023 Motion for an Enlargement of Time, Andrews states that

despite mailing his § 2255 Motion on February 21, 2023, it had not yet reached or been

docketed by this Court as of March 6, 2023.  He therefore requests additional time in which

to refile his motion.  Because the Court considers his § 2255 Motion to be timely filed, *see*

*supra*, n.4, his Motion for an Enlargement of Time is denied as moot.

The Court also denies as moot Andrews' Motion in Opposition to the Government

Request for Enlargement of Time, as the Court has previously granted the extension

requested by the Government.

III.   **CONCLUSION**

For all of the foregoing reasons, the Court holds that:

1.   Andrews' Pro Se Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 383] is **DENIED**.

2.   No evidentiary hearing on Andrews' Motion to Vacate is necessary.

3.   A Certificate of Appealability is **DENIED**.

4.   Andrews' Pro Se Application to Proceed in District Court without Prepaying Fees or Costs [Doc. No. 384] is **DENIED AS MOOT**.

5.   Andrews' Pro Se Motion for Enlargement of Time to File [Doc. No. 386] is **DENIED AS MOOT**.

6.   Andrews' Pro Se Motion in Opposition to Government's Request for Enlargement of Time [Doc. No. 390] is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  August 3, 2023                               s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge